# Citizens' Passenger Railway Company of Pittsburgh *versus* Foxley.

1. In an action against a city passenger railway company to recover damages for an injury caused by a street car running over a child four years of age, where there is testimony on behalf of the plaintiff which alone, if believed, would warrant a jury in inferring negligence on the part of the defendant company, the case must be submitted to the jury, notwithstanding the whole testimony as to the facts alleged to constitute negligence be conflicting, and no matter how strong or persuasive be the countervailing proof. In such case, the credibility of the witnesses and the weight of the evidence are matters exclusively for the jury. The single preliminary question for the court is: Is there any evidence which, taken alone, would fairly justify the jury in inferring negligence?

2. In such a case as the above, some of the plaintiff's witnesses who saw the accident testified that at the time it happened the street was clear of wagons, &c., for a considerable distance in front of the car; that the driver of the car was not looking ahead, but was conversing with and looking at two passengers who were riding with him on the front platform; and, further, that the brake of the car was not in perfect order. The testimony of other witnesses on both sides was conflicting with the above, and there was very strong and persuasive testimony on behalf of the defendant that immediately before the accident a large wagon was approaching the car on the other track, and at the moment that the car horses were opposite the wagon, the child ran out from behind the wagon, directly in front of the car horses, and was knocked down by one of them and run over by the car within less time than the car could possibly have been stopped. The car was going at an ordinary rate of speed. The judge refused to instruct the jury, as requested by the defendant, "that under all the evidence the plaintiff is not entitled to recover."

*Held*, that there was no error in refusing so to charge, and that the case was properly submitted to the jury.

November 4th, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY and CLARK, JJ. STERRETT and GREEN, JJ., absent.

ERROR to the Court of Common Pleas, No. 1, of *Allegheny county:* Of October and November Term, 1884, No. 153.

This was an action on the case by Christina Foxley by her father and next friend, John Foxley, against the Citizens' Passenger Railway Company of Pittsburgh, to recover damages for an injury caused to said Christina, then a child of four years of age, by being run over by a street car of the defendant company on Penn Avenue in Pittsburgh.

The material facts of the case, as they appeared on the trial, before STOWE, P. J., are briefly stated in the foregoing syllabus and fully stated in the opinion of this court, where the material testimony is cited in detail.

The defendant presented the following point:

" That under all the evidence in the case the plaintiff is not entitled to recover."

Answer, " Refused."

The court submitted the case to the jury under clear instructions relating to the law of negligence in such circumstances.

Verdict for plaintiff for $3,000, and judgment thereon. The defendant took this writ of error, assigning for error the refusal of the above point.

*Slagle* (*Wiley* with him) for the plaintiff in error.

*C. C. Montooth & Brother* for the defendant in error.

Mr. Justice CLARK delivered the opinion of the court, January 19th, 1885.

This action was brought by Christina Foxley, a little child of the age of four years, by her father and next friend, John Foxley, against the Citizens' Passenger Railway Company of Pittsburgh, to recover damages for personal injuries received by her on the fifth day of June, 1882. The child was at the time a student attending the Ralston Public School at or near the corner of Penn avenue and Fifteenth street, in the city of Pittsburgh. At the dismissal of the school, in the afternoon of the day mentioned, she crossed the avenue upon which the defendant's tracks are laid, and was on her return; on the flagstones, which form the public crossing at that point, she was thrown down by the horses attached to the defendant's street car, moving up the avenue towards Lawrenceville; the entire length of the car passed over her, and she sustained such injuries as resulted in the amputation of one of her lower limbs.

The Ralston school house is situate on the south side of the avenue, and the crossing referred to is immediately in front of its main entrance. At the time of the injury, Evan Evans and Thomas Evans were two or three doors below Fifteenth street, walking down the avenue on the north side; Stephen Williams and Mrs. Sarah Wyland were at the door of Mrs. Wyland's residence, a few feet only above the crossing on the north side, and Martha O'Donnell, Amy Bell and Miss Newmont were upon the steps of the Ralston school house. The driver, William Fallbush, David Stewart, James Kidd and perhaps others were upon the platform of the car, in front; the conductor, Charles Fagan, upon the platform in the rear, and Frederick Clouse, a passenger, was within looking from the front window. The occurrence was witnessed from all points of view, and as is usual in such cases, there

exists a considerable contrariety and conflict of statement respecting it.

The company contends that the injury was the result of mere accident; that as the car passed up Penn avenue, between Fourteenth and Fifteenth streets, on the south track, a coke wagon passed down on the north track, and that the car and the coke wagon met at or near the crossing in front of the Ralston school house; that just as the wagon left the crossing, the little child ran out from behind it directly in front of the defendant's horses, was thrown down and injured, without any fault whatever of the defendant; that the car was moving at a reasonable rate of speed, and that the child could not be seen by the driver until the horses were upon her, and until it was impossible to check the car and save her from injury. After the testimony was closed, therefore, the defendant's counsel requested the court to instruct the jury: "That under all the evidence in the case, the plaintiff is not entitled to recover." The refusal of the court to give this instruction is the single error assigned.

Negligence is the gist of the action. Was there such evidence of negligence upon the part of the driver or of the company, as justified a submission of that question to the jury? In determining this we cannot consider the veracity of the witnesses, the conflict in their testimony, or the weight of the evidence; these are matters exclusively for the jury, and with which we have nothing to do. Our attention is mainly directed, therefore, to the evidence relied upon by the plaintiff; if a sufficient case is there presented, the cause was properly submitted. The single question raised by this record is whether or not there was any evidence given of the defendant's negligence; by "any evidence" is not meant a mere scintilla, but such as taken alone, would justify the jury in inferring the fact. A jury cannot be permitted, arbitrarily and without evidence, to find negligence, but if there is evidence from which negligence may be fairly inferred, it must go to the jury, no matter how strong or persuasive may be the countervailing proof: Howard Express Co. v. Wile, 14 P. F. S. 201.

No inference, however, as to the want of reasonable care is to be drawn from the tender age of the child, or from the mere fact of the injury. Negligence must be affirmatively shown, and the party alleging it takes the burden of proof.

Whether or not a wagon did pass that point at the precise time indicated, is a controverted fact in the cause. The conductor, who was called by the plaintiff, says: "It appears to me there was a wagon of some kind, a broad wagon, and I have an idea, near as I can remember, that that wagon had

crossed over off the main track," &c.　The driver and two of the persons who were with him on the platform, witnesses called by the company, testify that the wagon did pass, and that the little child ran rapidly out from behind it, into the railway track and against the defendant's horses.　Several of the plaintiff's witnesses, however, testify that no wagon was there.　Evan Evans says, that he saw the child, when she was in the track, six or seven yards in front of the horses, and that the avenue was clear to Fifteenth street.　Thomas Evans says, when he first saw the child, she was about three yards in front of the horses "on the track," "in the middle of the track," and that there was no wagon at all there.　Martha O'Donnell says she is not sure, but "don't think there was any."　Amy Bell says "none to my recollection."　These witnesses were examined as to the particular facts, attending the injury, and were so situated, with reference to it, that they could have seen the wagon, if it had been there.　Two of the plaintiff's witnesses, Stephen Williams and Mrs. Sarah Wyland, who were very near to the crossing, and within a few feet of the place where the injury was received, were not directly interrogated upon the subject, but neither of them speaks of the wagon passing, as alleged.　Mrs. Wyland states the occurrence as follows :

Q. Where was the child when you first saw it ?

A. I saw it on that side of the street, before ever it left the sidewalk at all—that is, on the side that we live, right opposite the school.

Q. What was it doing when you first saw it ?

A. Just leaving the sidewalk, stepping off, it and the elder sister.

Q. Was the elder sister with the child or ahead of it ?

A. Yes, sir; I took notice to the child coming across and what drawed my attention to them was being particularly acquainted with them.　Then when they were going back again—they had been down the street to where there was a funeral leaving the house, and when the funeral went, the children came on up, and being neighbors of ours before that, I took more notice of them than I would of strangers—and they were leaving the sidewalk going over, and then I turned around to·look up the street after the funeral, and I turned around again, and just as I turned I saw Crissie and Nellie on the walk, and the little girl pulled one way, and the elder another, and the larger let go of the smaller one's hand and ran on to the side the school house was on.

Q. The older one did ?

A. Yes, sir.

Q. What did Crissie do at that time ?

A. The elder one didn't leave go till she saw the danger, and Crissie of course was bewildered; didn't do anything.

Q. What track were they standing in?

A. Standing on the right hand track, going out towards Lawrenceville, next the school house.

Q. At that time whilst Crissie and her elder sister were pulling each other, where was the car?

A. Coming up.

Q. Can you give us, approximately, the distance between the horses' heads, and the place the children were standing, at the time when you saw them?

A. When I first saw them, I suppose the car must have been as near to them, as that post back of you. I wouldn't say for certain.

Q. Do you mean the horses?

A. Yes, sir.

Q. The horses' heads?

A. Yes, sir.

Q. Between the point where you are sitting and where I am?

A. Yes, sir.

Q. Crissie was then in the middle of the track?

A. Yes, sir.

We have no means of determining the distance, indicated by the witness, but the statement is in clear conflict with the theory, that the child ran out from behind a wagon, against the defendant's horses.

It is contended also, on the part of the plaintiff, that the driver, at the time, was not observant of the track in front. There is testimony to the effect that he was, at the moment of the injury, looking over his left shoulder, engaged in conversation with the persons on the platform. Mrs. Wyland says: "He was talking to a couple of men on the front platform, that were standing there with him; they were talking, and he was just smiling as I hollowed, and Mr. Williams hollowed, at the same time, and they were hollowing over at the school house, and waiving, and, whether it was the excitement that the driver didn't take notice to her or not, he first looked to the school house, and then over towards our house, and I said, 'Oh, my! You have run over the child!' The horse had struck the child then." Evan Evans says: "As soon as the horse knocked the little girl down we hollowed at him, 'Stop the car,' and he would never pay no attention to us; he was looking over his shoulder talking to two men on the platform." Thomas Evans testified, that the driver was at the time looking over his shoulder talking to the persons on the platform; he further says: "I shouted to the driver; I stood

between six and seven yards, and shouted him to stop the car. He could have saved the child, but he never made no heed at all." These shouts or calls, to arrest the attention of the driver, it is true, would appear to have been given about the time the child was knocked down by the horses, but, if the testimony of these witnesses is true, the driver did not have his attention to his business; his duty was to drive the horses steadily, to observe the track in front of him, and not to entertain the passengers; he should not suffer his attention to be diverted: West Phil. Pas. R. Co. *v.* Mulhair, 6 W. N. C. 508. The parties were equally privileged in the use of the highway, and it was the duty of the defendant's driver, in the enjoyment of his right, to exercise ordinary and reasonable care for the safety of such as he might meet or pass on the way. Whether, if his attention had been wholly given to his business, he might have seen the child in time to avert the injury was, under all the circumstances, clearly for the consideration of the jury. The child, at the time of the injury, being of the age of four years only, no question of contributory negligence can arise.

There is also some evidence as to the condition of the brake upon the car. The conductor, Charles Fagan, says that it was out of order, that he did not make a particular inspection of it, but that from the way it operated, when he handled it on the day of the injury and on the day previous, it was either slack in chain or the blocks were worn out, and "that you couldn't stop the car as quick as you ought, in trying to stop at a crossing." It is unnecessary for me to consider, whether or not, if this stood alone it would justify a submission, on the question of negligence, but taken with the remaining facts and circumstances in evidence, it was certainly proper for the consideration of the jury. If it be true, as stated by one of the witnesses, that the child stood upon the track six or seven yards in front of the heads of the horses, when the car was moving at a reasonable speed, upon an ascending grade, it was without doubt a proper inquiry for the jury, whether or not in the exercise of reasonable care and diligence, with a properly adjusted brake, the injury might have been averted.

The testimony was conflicting, the witnesses were contradictory and the countervailing proof was strong, but the weight of the evidence and the ascertainment of the truth was for the jury.

We are of opinion that the case was properly submitted. The judgment is therefore affirmed.