## Gillespie *versus* McGowan.

1. A child of between seven and eight years of age may be a trespasser, and subject to the rules of law relating to trespassers.

2. Hydraulic Works Co. *v.* Orr, 2 Norris 332 explained, and as far as it appears to sanction any principle inconsistent with that herein laid down, overruled.

3. A. and B. were the owners of a lot of ground in the outskirts of Philadelphia, upon which there was and had for some time been a deep well. The nearest paved highway ran three hundred feet from the well, and the nearest road about eighty feet. There were houses about three hundred feet off, but the built-up part of the city was nearly half a mile distant. Whether any paths led near the well was disputed. The well was uncovered, and was not hidden by bushes or shrubbery. It was not fenced round, nor was the lot in which it lay. The lot was a common place of resort for children and adults. A boy of a little less than eight years of age was found drowned in the above well, his hat being found on the side together with a few small fishes. In a suit by the boy's father against A. and B. to recover damages for his death :—*Held*, that the boy was a trespasser, and that A. and B. had not been guilty of any such negligence as would render them liable for his death.

March 21st 1882. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Error to the Court of Common Pleas No. 3, of *Philadelphia county :* Of January Term 1882, No. 170.

Case, by Joseph McGowan against John Gillespie and Thomas Gillespie, to recover damages for the death of his son Joseph McGowan, Jr., a boy seven years and ten months old, who was drowned in a well upon the defendant's land. The plaintiff averred that the well being in proximity to a public highway the defendants negligently left it uncovered and unguarded.

On the trial, before Ludlow, P. J., there was no dispute as to the material facts, which were as follows : Prior to 1872 a large tract of land situate in the south-western section of the city of Philadelphia, of which the defendant's lot formed part, had been used as brick-yards, and the well in question, about

[Gillespie *v.* McGowan.]

six feet in diameter and about twelve feet deep, was used in con-
nection with the manufacture of bricks.   The clay being ex-
hausted the brick manufacture was abandoned about the year
1872, and the ground was left in its broken and uneven con-
dition, the general surface of the defendants' lot being twelve
to fifteen feet below the level of Long Lane, a paved highway
which ran about 300 feet distant from the well, and eight to
ten feet below the level of Old Buck Road, which ran through
defendants' lot about eighty feet distant from the well.   Old
Buck Road had been vacated on the city plans prior to the acci-
dent, but was not closed to travel.   The well became disused
and was left uncovered and unfenced, but it was not concealed
from view by bushes or other obstructions.   The nearest houses
to the well were 300 feet away, and the built-up portion of the
city was distant about half a mile.   The defendants' lot was not
inclosed by fences, and workmen were in the habit of crossing
it ; it was also used as a place of resort in hot weather.   The
only conflict of testimony was whether there was a defined
pathway leading from Long Lane across the defendants' lot,
passing near by the well to the streets beyond.

  · The plaintiff lived at 1818 Catharine street, and worked at
Twenty-first street and Washington avenue.  He was a widower
with five children, the eldest a girl, being thirteen years of age,
who had charge of the others.   On July 9th 1880, the deceased
boy took his father's dinner to him, and returned home about
half past twelve o'clock.   He went out again about half
past one, and was not again seen until his dead body was
found in the well about four o'clock that afternoon.   His hat
was found on the edge of the well, and one witness testified that
a few small sun-fish, such as are found in brick-yard wells, were
found there, and that there was an indication upon the side of
the well that the boy had slipped in there.

  No points were submitted by counsel.

  The Court charged the jury, inter alia, as follows :

  "I say to you that a child cannot be treated as a trespasser,
or a wrong-doer ; and even trespassers may have rights, when
injuries are negligently inflicted upon them.   The true princi-
ple which must be applied to a case of this kind is this :   The
owner of premises in the neighborhood of a populous city, and
opening on a public highway, must so use them as to protect
those who stray upon them and are accidently injured.   In ap-
plying this principle the jury must take into consideration all
the circumstances concerning this case, for each case may differ
from every other, and the rule which would apply here would
not apply to a pure country place or a remote district of the
state.

  "How, then, was this lot used ; and by whom ; and for

  4 OUTERBRIDGE.—10

what purpose ? Was it, in fact, so situated and used as to be fairly considered as opening upon a public highway ? Was this well so situated, in view of all the circumstances, as to require any special protection—it being evident that these defendants had no malice toward any one, and probably deplored, as much as any human beings could, such a catastrophe ? Was there, or was there not, a pathway leading to the well directly, and if not, was there any reason why a person, young or old, might wander into the well ? While this child was too young to be guilty of what is called contributory negligence, yet, if the jury find that this poor boy deliberately went fishing in that well, and fell in accidentally, then I instruct you that the principle heretofore stated does not apply to this case, for the defendants owed no duty, under such circumstances, to this child or to his parents. Under this instruction I leave the jury to find whether the defendants have been guilty of negligence under the circumstances of the case."

Verdict for the plaintiff for $1,000. The court discharged a rule for a new trial, LUDLOW, P. J., saying in an opinion filed :—" This case was ruled at the trial upon the authority of Hydraulic Works *v.* Orr, 2 Norris 332. . . . . But, it is contended, that Gramlich *v.* Wurst, 5 Norris 74, controls this case, and the cases cited in the opinion of the supreme court, on pages 78 and 79, are pressed upon our attention, and we are asked to reverse the principles stated in the charge. Under the facts developed in this case, we must decline to take the view urged by defendants' counsel, for the reason that the vital fact established by the evidence here, is wanting in every case heretofore cited, and is present in Hydraulic Co *v.* Orr, which is expressly affirmed in Gramlich *v.* Wurst. Here the lot was thrown open to the public, was used with the implied assent of the defendants, not only as a thoroughfare for the people in the neighborhood, but as a pleasure ground, and was so used as to throw the obnoxious well into dangerous proximity to passers by.

" Under the evidence, we deny that this child was legally a trespasser, but even if he had been, we contend most strongly that the cause belongs in principle to the class of cases cited upon page 80 of 5 Norris, and that the verdict was under the law and evidence a righteous one."

The court entered judgment upon the verdict, whereupon the defendants took this writ of error, assigning for error the portion of the charge of the court above quoted.

*R. Alexander*, for the plaintiffs in error.—The court below erred in instructing the jury that "a child cannot be treated as a trespasser or a wrong-doer." Cauley *v.* R. R. Co., 9 W. N.

[Gillespie *v.* McGowan.]

C. 505; Duff *v.* R. R. Co., 9 W. N. C. 504; Moore *v.* R. R. Co., 11 W. N. C. 310. Where a parent sues for the loss of the services of a child of tender years, or an adult sues for personal injuries, there can be no recovery if the injury happen on private property in an excavation or well made and used without malice or intent to harm, not substantially adjoining a highway, the one injured being on the premises without legal right: Gramlich *v.* Wurst, 5 Nor. 75; Knight *v.* Abert, 6 Barr 472; Phil. and Read. R. Co. *v.* Hummell, 8 Wr. 378; Gillis *v.* Penna. R. R. Co., 9 P. F. S. 129; Cauley *v.* Railroad, 9 W. N. C. 505; Cox *v.* Farmers' Market, 9 Am. L. Reg. N. S. 104. Morgan *v.* Hallowell, 57 Me. 375; Howland *v.* Vincent, 10 Met. 371; Pierce *v.* Whitcomb, 48 Vt. 127; Maenner *v.* Carroll, 46 Md. 193; Kohn *v.* Lovett, 44 Ga. 251; Hargreaves *v.* Deacon, 25 Mich. 1; Durham *v.* Musselman, 2 Blackford 97; R. R. Co. *v.* Bingham, 29 Ohio 364; Vanderbeck *v.* Hendry, 34 N. J. 467; McLaury *v.* City, 54 Iowa 717; Louisville & Portland Can. Co. *v.* Murphy, 9 Bush (Kentucky) 522; Straub *v.* Sorderer, 53 Mo. 38; City of Norwich *v.* Breed, 30 Conn. 535; Birge *v.* Gardiner, 19 Conn. 507; Beck *v.* Carter, 6 Hun 604; Keffe *v.* Milwaukee &c. R. R. Co., 21 Minn. 207; Stout *v.* Sioux City &c. R. R. Co., 2 Dillon 294; Hardcastle *v.* Railway Co., 4 Hurlst. & N. 67.

*Thad. L. Vanderslice*, for defendant in error.—This case is governed by Hydraulic Works *v.* Orr, 2 Norris 332. The defendants owed to the public the duty of filling up the abandoned well, or at least putting a sufficient guard round it; Kay *v.* Pa. R. R. Co., 15 P. F. S. 272; Birge *v.* Gardiner, 19 Conn. 507; Gramlich *v.* Wurst, 5 Norris 80; Stout *v.* R. R. Co., 2 Dillon 294; Keffe *v.* R. R. Co., 21 Minn. 207. Even if the child had been a trespasser the verdict could not have been different: Lynch *v.* Nurdin, 1 Ad. & El. N. S. 29; Kay *v.* Pa. R. R. Co., 15 P. F. S. 272.

Mr. Justice PAXSON delivered the opinion of the court, April 24th 1882.

The defendants below were the owners of a field near Long Lane, in the southern part of the city of Philadelphia. This field had formerly been used as a brick-yard, but the brick-clay having been exhausted, it had long since ceased to be used for such purpose and was lying out in commons. The surface, as is usual in abandoned brick-yards, was uneven, and in one portion of it there was a well of water about six feet in diameter and twelve feet deep. This well was constructed originally for purposes of drainage as well as to supply water for brick making. The field was not inclosed nor was there any guard

around the well. The sides of the latter were sloping at the top; there were no bushes about it to conceal it from the eye, and its situation was such that no one would be likely to walk into it, unless in the darkness of the night. It was over one hundred feet from the public highway and about three hundred yards from the nearest house. There was evidence of a path or paths across the field but not directly to the well, and that it was used to some extent as a place of resort by children and adults. About four o'clock on the afternoon of Friday July 9th 1880, the plaintiff's son, a boy of seven years and ten months of age was found drowned in this well. According to the testimony his death must have occurred between one and four o'clock P. M. There was nothing to throw any light upon the circumstances connected with his sad fate, beyond what I have thus briefly stated.

The father of the boy brought this action in the court below, to recover damages or compensation for his death, the ground of the action being that the owners of the field were guilty of negligence in permitting the well to remain without a fence or guard of some kind to protect it. The jury rendered a verdict in favor of the plaintiff, upon which the court below entered a judgment against the defendants, who have brought the record into this court by a writ of error for review.

Upon the trial in the court below the learned judge instructed the jury as follows (see 1st and 2d assignments) : "I say to you that a child cannot be treated as a trespasser or wrongdoer, and even trespassers may have rights when injuries are negligently inflicted upon them. The true principle which must be applied to a case of this kind is this, the owner of premises in the neighborhood of a populous city, and opening on a public highway, must so use them as to protect those who stray upon them and are accidentally injured."

This ruling was based upon Hydraulic Works Company *v.* Orr, 2 Norris 332. The language used was not that of this court, yet it is only fair to the learned and able president of the court below to say that it is substantially the ruling of the learned judge who tried the case in 2 Norris, and which was affirmed here. That case, however, was decided upon its own peculiar circumstances. The Hydraulic Works Company maintained upon its premises what this court designated as a dangerous and deadly trap, weighing over eight hundred pounds, and liable to fall at any moment, and "crush children beneath it like mice in a dead fall." It was in the heart of the city, close to a public highway and the access to it frequently left open, and it was moreover so constructed as not to give any indication of its danger. It was to such a structure, so situated, that the learned judge who tried that cause below

applied the language referred to. It is also to be noticed that the opinion in Hydraulic Works Company *v.* Orr makes no reference to the assignments of error and contains no authorities in support of it. What this court meant to decide in that case was that a person who maintains such a dangerous trap close to a public highway in the heart of a large city might be liable to a person injured thereby, although such person were a child of six years of age trespassing upon the premises, and the familiar principle was invoked that "one may not justifiably, or even excusably, place a dangerous pit-fall, and wolf-trap or a spring-gun, purposely to catch even wilful trespassers poaching upon his grounds." Hydraulic Works Company *v.* Orr is authority only for its own facts. It was not intended to assert the doctrine that "a child cannot be treated as a trespasser or wrongdoer," and so far as it appears to sanction such a principle it must be considered as overruled. To apply such a doctrine to a boy lacking but two months of eight years of age would overturn the law as it has existed in England and in this country for two hundred years. It needs but to turn to as familiar an authority as Blackstone to see that a child of this age is liable for his torts and may be punished for his crimes. It is true the law properly holds that a child of tender years shall not be charged with contributory negligence. But this principle cannot be applied as a rule of law in all cases to children nearly eight years of age. Much may depend upon the character of the injury, the circumstances under which it occurred, and the size, intelligence and maturity of the child. In such cases a jury must be allowed to pass upon the question of contributory negligence; it is error to rule it as a question of law.

Nor do we assent to the broad proposition that "the owner of premises in the neighborhood of a populous city, and opening on a public highway, must so use them as to protect those who stray upon them and are accidentally injured." This doctrine rests chiefly upon the case above referred to, which was not intended to decide any such principle, and is in direct conflict with the recent well considered case of Gramlich *v.* Wurst, 5 Norris 74, in which it was held that "where the owner of land in the exercise of lawful dominion over it makes an excavation thereon which is such a distance from the public highway that a person falling into it would be a trespasser upon the land before reaching it, the owner is not liable for an injury thus sustained." In that case the deceased during a dark night fell into an excavation made for the construction of a vault, upon a lot fronting on one of the public streets of the city of Philadelphia. The excavation was within eighty feet of the street and was unguarded, but the court held the owner was not liable. The well established principle in such cases is that "where an excava-

tion is made adjoining a public way so that a person walking on it might, by making a false step, or being affected with sudden giddiness, fall into it, it is reasonable that the person making such excavation should be liable for the consequences. But when the excavation is made at some distance from the way, and the person falling into it would be a trespasser upon the defendant's land before he reached it, the case seems to be different." Hardcastle *v.* The South Yorkshire Railway Company, 4 Hurl. & N. 67; Hounsell *v.* Smyth, 7 C. B. N. S. 731. The same doctrine was asserted with much force by Chief Justice Gibson in Knight *v.* Abert, 6 Barr 472 where he said : " A man must use his property so as not to incommode his neighbor," but the maxim extends only to neighbors who do not interfere with it or enter upon it. He who suffers his cattle to go at large takes upon himself the risks incident to it. If it were not so a proprietor could not sink a well or a sawpit, dig a ditch or a millrace, or open a stone quarry or a mine hole on his own land except at the risk of being made liable for consequential damage from it, which would be a most unreasonable restriction of his enjoyment." This principle is further sustained by Philad. and Reading Railroad Company *v.* Hummell, 8 Wright 378; Gillis *v.* The Penn. R. R. Co., 9 P. F. S. 129; Cauley *v.* The Railroad Co., 9 W. N. C. 505; Duff *v.* Alleghany Valley R. R. Co., Ibid. 504.

It is settled by abundant authority that to enable a trespasser to recover for an injury he must do more than show negligence. It must appear there was a wanton or intentional injury inflicted on him by the owner. It is sufficient to refer to Gillis *v.* The Railroad Company, supra, where the subject is discussed by the present chief justice, and many of the authorities referred to. In Hydraulic Works Company *v.* Orr, there was a recklessness that may be said to partake of the nature of wantonness, and it is only upon this principle that judgment can be logically sustained.

We are unable to see anything in this case to charge the defendants with negligence in not enclosing their lot or guarding the well. There was no concealed trap or dead fall, as in Hydraulic Company *v.* Orr. The well was open and visible to the eye. No one was likely to walk into it by day, and this accident did not occur at night. A boy playing upon its edge might fall in, just as he might in any pond or stream of water. In this respect the well was no more dangerous than the river front on both sides of the city where boys of all ages congregate in large numbers for fishing and other amusements. Vacant brick yards and open lots exist on all sides of the city. There are streams and pools of water where children may be drowned ; there are inequalities of surface where they may be

[Thackara *v.* Mintzer.]

injured.   To compel the owners of such property either to
enclose it or fill up their ponds and level the surface so that
trespassers may not be injured would be an oppressive rule.   The
law does not require us to enforce any such principle even
where the trespassers are children.   We all know that boys of
eight years of age indulge in athletic sports.   They fish, shoot,
swim, and climb trees.   All of these amusements are attended
with danger, and accidents frequently occur.   It is part of a
boy's nature to trespass, especially where there is tempting fruit,
yet I never heard that it was the duty of the owner of a fruit
tree to cut it down because a boy trespasser may possibly fall
from its branches.   Yet the principle contended for by the
plaintiff would bring us to this absurdity if carried to its logical
conclusion.   Moreover, it would charge the duty of the protec-
tion of children upon every member of the community ex-
cept their parents.

Judgment reversed.