## Washington LeGrand and Wife *v.* The Wilkes-Barre and Wyoming Valley Traction Company, Appellant.

*Picnic grounds—Maintenance of a pond not negligence—Such pond not a pitfall.*

The presence of a pond in a park used by a traction company for picnic purposes does not impose upon the proprietor the obligation to inform all comers by notice that they shall not bathe therein nor to post a guard to enforce an observance of such conduct. The absence of such guard or notice and the existence of the pond are not negligence. It is not to be considered a pitfall. There can be therefore no recovery for the loss of life of a boy, one of a school picnic party, who entered the pond with some of his companions to bathe and getting into deep water was drowned.

Submitted Jan. 10, 1899. Appeal, No. 28, Jan. T., 1899, by defendant, from judgment of C. P. Luzerne Co., Oct. T., 1894, No. 380, on verdict for plaintiffs. Before BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Reversed. ORLADY, J., dissents.

Trespass. Before LYNCH, J.

It appears from the evidence that Frank LeGrand a boy thirteen years of age was one of a school picnic party at the Hanover Park picnic grounds where school picnics, among others, were permitted by the railroad company, owners of the grounds. About a thousand feet from the picnic ground proper defendant had recently made an artificial pond for boating purposes. Some twenty-eight boys including Frank LeGrand went to this pond, stripped and went in swimming at a place where the banks slope gently down to shallow water. About thirty-nine feet from the shore, as fixed by the actual measurement, the boy got beyond his depth and was drowned. This action was brought by the boy's parents to recover for his death on the theory that the pond was a trap and pitfall, which it was negligence to leave unguarded and without warning.

Verdict and judgment for plaintiffs for $607.25. Defendant appealed.

*Error assigned* among others was refusal of binding instructions for defendant.

*Henry A. Fuller* and *John T. Lenahan*, for appellant.—There was no proof of extraordinary risk in the case at bar. The owner should not maintain a trap or pitfall, nor extend an invitation into danger, nor fail to guard against unusual risk, within the limits of the park. But none of these circumstances existed, and the court should not have submitted the question of their existence.

This pond was not a trap or pitfall. It was not a blind pool which demanded a railing or a notice of danger. It was not a raging torrent nor an unfathomable lake requiring watchmen to keep people away. There was no abrupt bank, unprotected by a barrier, and even had there been, the boy did not come to his death from that cause. It was just a common little piece of water produced by the overflow of the creek, very shallow for some feet from shore and not deep at any point. So much is certain whether one accepts the exact measurement of plaintiff's witness and defendant's engineer, or the uncertain guess of other witnesses. Plaintiff lays great stress upon the allegation that the boy stepped into a hole or excavation, but if this existed, it was at some distance from shore, thirty-nine feet by actual measurement, and at least fifteen feet by guess. True the water was deep enough to drown a boy. But likewise the trees on the place were high enough to cause his death if he had climbed and fallen.

*James L. Lenahan*, for appellees.—The defendant offered special inducements to school children to visit the park, to wit: half rates and no charge for the grounds ; it was therefore bound to take extra precautions for their safety.

The defendant knew, or ought to have known when it invited school children to this resort, that a large number would be under the supervision of each teacher, and some of them would surely stray to this pond and be tempted, boy like, to "go in swimming."

Was there an absence of ordinary care under the circumstances ?

This defendant transformed a harmless creek into a dangerous pool. But, say counsel for the defendant, this body of water was for the sole purpose of boating; no one had ever bathed in it before. Let me ask, how was Frank LeGrand

and his boy companions to know that the pond was not for bathing?

OPINION BY WILLIAM W. PORTER, J., March 23, 1899:

This is an action brought by parents for damages for the death of a son, alleged to be due to the defendant's negligence. The facts are peculiar. The defendant company on June 12, 1894, operated an electric street railway and owned picnic grounds which were used for the pleasure of the patrons of the road and other persons, to whom the grounds were at times rented. On the day above named, a number of children from the Hancock school, in Wilkes-Barre, arranged to hold a picnic. It was agreed with the defendant that the children should pay ten cents for car fare for the round trip and for the use of the picnic grounds.

Within an hour or more of the arrival of the party, the plaintiff's son was drowned in a pond or lake, which formed a part of the park. The pond was constructed by damming a small creek, and was intended for boating purposes. Part of the channel of the creek was deepened to adapt the pond to these purposes. The pond lay some distance below the main part of the picnic grounds. To it the plaintiff's son, with a number of boy companions, went, and, removing their clothing, proceeded "to go in swimming." At the point where they entered the water, the bottom descended gently for a number of feet. It then came to a place where the channel suddenly deepened to some six feet. The plaintiff's son went out to this point, got into the deep water and was drowned.

The case presents the question, Was the boy's death due to the defendant company's negligence? There is no negligence in maintaining a pond in a public pleasure park. Its presence in such a place is not an invitation to adults or children to bathe therein. In the absence, then, of any invitation by sign, or by visible appliances or preparations for bathing, the company might presume that no one would attempt to bathe in a place of such public character, notwithstanding the fact that the pond was more secluded than some other parts of the park. The mere presence of a pond in a public pleasure park does not necessarily impose upon the proprietor the obligation to inform all comers by notice that they shall not bathe, nor to

post a guard to enforce an observance of such conduct. There may be circumstances when either or both of such courses may become desirable or even necessary, but no such circumstances are made to appear in this case.

If the presence of the pond was no invitation, its condition or construction only becomes important, in respect to negligence, if it put in peril those who were using it or were about it for a lawful or usual purpose. There was nothing in the condition of this pond, as disclosed by the testimony, which endangered those who were upon its banks or were encroaching upon its margin. This marks a clear distinction between the present case and that of Barthold v. Philadelphia, 154 Pa. 109. This was not a pitfall which demanded protection or guard. It was not an improper construction.

To hold the conduct of the defendant in this case to be negligent, would, we believe, be a step in advance of any liability yet recognized by the law. The defendant's relation to its visitors imposes the exercise of care, but to sustain this judgment would be carrying the obligation too far. Thus finding that the defendant was not convicted of any negligence by the testimony presented, we enter upon no discussion of the question of the contributory negligence of the plaintiff's son. We are of opinion that the defendant company was entitled to binding instructions, and that the judgment must be reversed.

Judgment reversed.

ORLADY, J., dissenting:

I dissent from the judgment in this case for the following reasons: Hanover Park was an investment for profit by the defendant company, to which, through the temptation of half rate fares and the privilege of using the park grounds it induced a large number of school children to go for a day's outing. One of the attractions in the park was a dam or a pond of water, in which there was an artificial channel of a dangerous depth, and, to my mind, it was as natural and reasonably to be expected an act for active healthy boys of thirteen years of age, who were for the day freed from the restrictions of city school life and exhilarated by an excursion to the country in June, to " go in swimming " as to expect that their elders would patronize the dancing pavilion or the photograph gallery. That it was a

natural impulse is shown by the fact that more than twenty in number of these children did participate in the boyish pleasure and were in the water with the LeGrand boy when he was drowned. The children were in the park by the special solicitation of the owners and had a right to use every part of it in the belief that they would be warned against any unobservable dangers. The pond was located at a discreet distance from the pavilion so as to make it specially tempting to boys for bathing purposes. The hidden channel was not suggested by the shore lines nor by any notice to the invited children not to wade nor bathe in the pond. The duty of giving notice of this concealed danger was recognized by the defendant, who, immediately after the drowning of the boy, caused to be placed around the pond, signs of "Bathing strictly prohibited." The defendant had promulgated rules by which all persons were cautioned against "gambling, boxing, fighting, or anything of that kind, and required that those occupying the park should be under the rules and regulations of the Company," as testified to by its agent who had the management of the grounds, but, so far as any rule or notice was shown, the pond was free from any restrictions. A neglect to give notice of a hidden danger is some times the highest evidence of negligence; trapdoors, elevators, pits, embankments, and the like, require guards or notices to relieve the owner from liability. Unguarded premises supplied with dangerous attractions are regarded as holding out implied invitations to children, which make the owners responsible for injuries to them. The question whether the defendant has or has not been guilty of negligence, in case of such an accident upon his land to a child of tender years, is for the jury. Involved in this question is the further question whether or not the premises were sufficiently attractive to entice children into danger, and to suggest to the defendant the probability of the occurrence of such accidents to children by reason of said attractiveness; and, therefore, such further question is also a matter to be determined by the jury: City of Pekin v. McMahon, 27 L. R. A. 206, and notes; Brinkley Car Co. v. Cooper, 60 Ark. 545. The owner of land where children are allowed or accustomed to play, particularly if it is unfenced, must use ordinary care to keep it in safe condition; for they being without judgment and likely to be drawn by childish

curiosity into places of danger are not to be classed with trespassers, idlers, or mere licensees: 2 Shear. & Redf. Neg. (4th ed.) sec. 705. In such cases the owner should reasonably anticipate the injury which had happened: 1 Thomp. Neg. 304. "Duties arise out of circumstances, hence, when the owner has reason to apprehend danger, owing to the peculiar situation of his property and its openness to accident, the question becomes one for a jury, to be determined upon all the facts of the probability of danger and the grossness of the act of imputed negligence:" Hydraulic Works Co. v. Orr, 83 Pa. 332; Schilling v. Abernethy, 112 Pa. 437. These two cases have been frequently distinguished by the Supreme Court from those it has had under consideration; but, when the facts measure to the standard of duty given in the cases cited, we regard them as convincing authority. These two cases and Barthold v. Philadelphia, 154 Pa. 109, hold that an owner is liable for an accident to a child who is at the time of the accident technically a trespasser, or who acts upon an implied invitation to occupy the dangerous place; but in the case before us the boy acted upon a contractual right, supplemented by a special invitation to occupy and use the whole park, and, whether it was reasonable care under the circumstances to maintain this concealed risk which was known to the owner and unknown to its guests in the pond or dam without any cautionary warning in the condition described in the evidence, was a fact solely for the jury, and is not one of law for the court. See Lepnick v. Gaddis, 26 L. R. A. 636, and notes.

The fact that the boy went into the water to swim is not conclusive against his right to recover, nor is the fact that three teachers accompanied the three schools, as it could not have been reasonably expected that these lads would remain in a body when the park grounds were open to them. These facts should be considered, and doubtless were regarded by the jury on the question of contributory negligence, but, under the opinion of the court, the nonliability of the defendant would be the same if this lad had been wading in the shallow water along the shore under the eyes of the teachers and had accidentally stepped into the deeper channel. In Gillespie v. McGowan, 100 Pa. 144, the cause of death was a well in an abandoned brick yard on private property. The danger was open and visible, and a notice of

such a risk was not required to the boy who was a trespasser. This pond or dam is not analogous to river front exposures, as all persons have equal knowledge of the perils attending the use of a natural stream, while the owner of an artificial pond or dam has or should have special information in regard to hidden dangers which he creates or maintains. And it is matter of common knowledge that bathing in streams in cities or towns is prohibited by ordinance and is violative of common decency, and transgressions in that line would be weighty evidence of contributory negligence. In Barthold v. Philadelphia, 154 Pa. 109, " a pool or well in which the plaintiff's son lost his life was upon ground acquired by the city some six months before the accident, for the purpose of adding it to Fairmount Park. It was not only upon the public grounds but was open to access to persons of all ages. The wall that enclosed it was lower than the surrounding surface." The defendant's request for binding instruction was refused, and the Supreme Court held that " Whether it was the exercise of proper care on the part of the city to leave this pool for six months in the condition described, open to the access of children, in the public grounds, was not a question of law but of fact and properly submitted to the jury. We have nothing whatever to do with the correctness of their finding." The particular manner in which that boy was precipitated into the water did not determine the liability of the city, but its negligence consisted in maintaining on its property an unguarded and dangerous pool or well which was open to the access of children. It is only when the precise measure of duty is determinate—the same under all circumstances—that the court can undertake to determine what constitutes negligence : P. R. Co. v. Werner, 89 Pa. 59; Schum v. P. R. Co., 107 Pa. 8; Pittsburg Ry. Co. v. Kane, 6 Atl. Rep. 845. " Where the duty is defined, a failure to perform it is of course negligence, and may be so declared by the court. But when the measure of duty is not unvarying, when a higher degree of care is demanded under some circumstances than under others, when both the duty and the extent of performance are to be ascertained as facts, a jury alone can determine what is negligence and whether it has been proved," McCully v. Clarke & Thaw, 40 Pa. 399, " but when it depends not merely on the existence of facts, but on conclusions arising from them respecting which there is no

12, (1899).] Dissenting Opinion.

fixed standard of judgment, it is for the jury, even when there is no dispute as to the facts. While facts may be admitted, the conclusions to be drawn from them may remain a matter of controversy. To justify a verdict by direction, two conditions must concur: (1) The controlling facts must be established beyond doubt; (2) their effect, in the conclusions to which they lead, must be so clear and unquestionable that it may be judicially declared:" Menner v. D. & H. C. Co., 7 Pa. Superior Ct. 135; Phillips v. Traction Co., 8 Pa. Superior Ct. 210. These decisions point out the proper course to be pursued in this case. The question of the defendant's negligence and the contributory negligence of the boy were fully and fairly submitted to the jury in a careful and adequate charge and I would affirm the judgment.