Colligen et al., Appellants, *v.* Philadelphia Electric Co.

Argued April 23, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Samuel P. Lavine,* with him *Leo Weinrott,* for appellant.—Defendant was under a duty to use the highest degree of care consistent with the practical operation of its outdoor substation: Green v. Rys., 246 Pa. 340; Lynch v. Electric L., H. & P. Co., 268 Pa. 337; Fitzgerald v. Edison E. I. Co., 200 Pa. 540; Mullen v. Gas Co., 229 Pa. 54; Donnelly v. Lehigh N. E. Co., 258 Pa. 580; Daltry v. Electric Light Co., 208 Pa. 403; Novack v. Boro., 292 Pa. 537; Kay v. R. R., 65 Pa. 269; P. R. R. v. Lewis, 79 Pa. 33; Costanza v. Coal Co., 276 Pa. 90; Nichol v. Telephone Co., 266 Pa. 463; Smart v. Telephone Co., 83 Pa. Superior Ct. 419; Bowser v. L., H. & P. Co., 267 Pa. 483.

*John P. Connelly,* for appellee.—This was not an attractive nuisance. There was no evidence to show that it was a nuisance of any kind. It is true the children played on this ground, but there is no evidence to show that, so far as the electric company is concerned, it per-

mitted or allowed children to play on this outdoor substation: Blackstone v. Light & Power Co., 249 Pa. 519; Thompson v. R. R., 218 Pa. 444; Kosson v. Power Co., 293 Pa. 131.

OPINION BY MR. JUSTICE FRAZER, June 21, 1930:

Plaintiffs, a minor, and his mother in her own right, sued to recover damages for personal injuries sustained by the son, alleged to have been caused by negligence of defendant, or its agents or employees, in permitting an electric transformer building, it had erected and was operating at the time, to be and remain in an unsafe and dangerous condition. The jury returned a verdict in favor of plaintiffs. A motion by defendant for judgment non obstante veredicto was sustained by the court in banc, and final judgment entered for defendant. Plaintiffs' appeal followed.

Defendant company erected on property of the Breyer Ice Cream Company, located in the City of Philadelphia, an electrical substation from which to supply electric current to that company for use in its business. The electric substation, which was approximately seven feet distant from a building of the ice cream company, was constructed wholly of sheet iron, with smooth exterior surfaces, was nine feet high, thirty-nine feet long and ten feet wide, in which were inclosed electric transformers of high voltage. The structure was without roof, the transformers however were covered and encased in sheet iron, their height being somewhat less than the height of the building; a steel girder extended immediately above the transformers from one end of the structure to the other. The only entrance was by means of cast iron doors, which were kept locked, or by the use of ladders with which to reach the structure's top from the outside. The building was located entirely upon ground owned by the ice cream company, no portion of the area of land here involved was owned or rented by defendant. Children of the neighborhood for nine years

previous to the accident were accustomed to play upon the adjoining property of a railroad company and the premises of the Breyer Company, near by the latter's buildings and the electric transformer box. It does not appear that at any time, before the day of the accident to plaintiff, had any child attempted to climb by any means to the top of the substation. The testimony of witnesses sustains the presumption that the hazardous nature of the interior of the building was known to those using the premises as a playground; and signs reading "Danger, Do not climb," in large letters, were posted on its outside walls, which all witnesses, except plaintiff, had, as they testified, often seen and read. Plaintiff who had played there many times, claimed he had never seen them, although ten years old at the time of the accident, attended school, was in the fourth grade and could read.

On the day of the accident, during daylight, plaintiff and a boy companion, after romping for some time on the low roof of the ice cream manufactory, planned to climb to the top of the adjoining transformer box, a few feet distant from the former building. To accomplish this they secured a ladder at the ice cream factory, carried it to the electric transformer building, leaned it against the sheet iron side, or end, of that structure, but discovered it was too short to permit reaching the top of the wall. According to plaintiff's story, they then "noticed a big ladder" standing against the wall at another part of the structure, which they used, plaintiff preceding his companion. They reached the girder which they proceeded to walk along, above the electric transformers. While thus moving, plaintiff's body touched a wire or other part of the apparatus, as was explained by his companion, who followed him on the girder, receiving a shock which caused him to fall into the interior of the box. Aid came immediately, the locks were broken from the door and the boy removed, seriously injured.

Leaving aside for the moment the matter of the particular ladder by which the boys reached the top of the transformer box, the record clearly establishes that as to the construction and operation of the substation, defendant could not be charged with negligence. No fault in the construction was shown; and with the sheet iron doors continually locked, with smooth perpendicular sheet iron sides and ends reaching over nine feet above the ground, and up which neither adult nor child could climb, it cannot be said with any degree of fairness that the structure, as it stood, was a dangerous object. Nor was the absence of a roof negligence. There was no evidence to show an unusual or improper construction of a building of this character; and defendant was not obliged to add a roof to the structure to prevent harm to trespassers or to persons not having a legal right to be upon the premises. As is evident to this effect, many buildings used for manufacturing or electric purposes, contain within dangerous machinery and apparatus, which, made safe for the employees, would bring injury or death to a trespasser, who carelessly, or ignorant of the latent danger, might illegally meddle with them.

Nor do we think the substation constituted an attractive nuisance, as contended by plaintiff. It is true, children were accustomed to play upon the adjoining premises, which, as already stated, were owned, not by defendant but by the Breyer Company. It cannot be sensibly claimed that the perpendicular walls and ends of forbidding sheet iron, allowing no view of the apparatus within, would constitute an inviting situation to a normal child of plaintiff's age. Nothing there offered a chance for play, nothing suggested a place upon which to romp. It presented no allurements such as are offered by an uninclosed apparatus or other instrumentality, where opportunities for childish sport would entice. The hazardous nature of the interior of the transformer box was known to plaintiff before he ascended to the top. He was warned by his companion, who fol-

lowed him on the ladder, that there was electricity inside "and to be careful." Thus it is plain that both knew that their act was a dangerous one. The conspicuous danger signs on the structure were often seen and read by all of plaintiff's witnesses who were asked about them at the trial. He alone, although he could read, and had been on the premises many times, had never seen the warning signs, according to his testimony. Having erected a structure so forbidding and unalluring as this transformer box, defendant had no reason to anticipate that any one, other than those authorized to do so, would climb to its top. It is not sufficient that the instrumentality or condition may be a source of danger to children, but it must be of such a nature that danger to children is reasonably to be apprehended; and in the absence of circumstances indicating to the owner or person in charge a reasonable likelihood of danger, the doctrine of attractive nuisance does not apply: 45 C. J. 764; that the attractive nuisance rule should apply, the property, appliance or condition in question must be so accessible to children that it should reasonably be anticipated they will come upon it, and it is not sufficient that it is possible for children to reach it: 45 C. J. 768. In the present instance, the one possible way, aside from being bodily lifted up, for plaintiff to reach the top of the substation was by means of a ladder, and in such manner he reached the top. Appellants contention is that the ladder so used was placed against the structure by defendant and allowed to remain there. That claim however is not sustained by the evidence. According to plaintiff's story, as referred to above, he and his companion carried a ladder from the ice cream plant to the substation. They found it was too short to enable them to reach the top of the structure. Then, as they state, they found another and longer ladder at or against the transformer box, and by means of it reached the top. But no evidence whatever was produced to prove by whom or when the longer ladder was placed against

the structure, or that it was the property of defendant. There were many ladders of various lengths lying about or standing against the ice cream plant at all times. Witnesses testified that several times previous to the day of the accident they saw men, presumably defendant's employees, on ladders leaning against the substation; but none of them saw ladders standing against that building or lying near it later than three or four days before the accident, and none of them saw ladders standing against the building in that interval, until the one noticed there after the accident. Not a single witness saw a ladder there the day before the accident and plaintiff himself repeatedly and in the most emphatic terms, declared, in reply to the searching questions of the court and counsel, that no ladder "was there," the day before; and neither he nor his companion who went to the top of the transformer with him, saw it "there" until they "noticed" it immediately before their use of it. The material question then is, not as to the owner of the ladder, but as to who placed it in the position which it is claimed brought about the accident. So far as the testimony discloses, no one saw it placed against the electric building during the night preceding the day of the accident; no one saw it during the interval between dawn and the moment of the accident, except plaintiff and his companion, who discovered it, as they claim, standing against the substation, immediately before their ascent to the structure's top and after they had themselves brought a shorter ladder from the ice cream factory. They did not see defendant's employees or other person place it there. In fact, there is no evidence whatever on that point, and, consequently, no evidence that defendant contributed in any way to the accident. Plaintiffs' counsel rely on the case of Sakach v. Antonopolis, 298 Pa. 130, where a woman walking on the sidewalk was injured by the fall of a moving picture theater sign, suspended above the pavement. In that case there was sufficient evidence to support the infer-

ence that the rope used to hold the sign was defendant's rope and the sign was suspended by his employees, and the broken rope had been purchased by an employee of defendant for the purpose for which it was used, two days before the sign fell. In the case before us there is no evidence showing that the ladder used by the boys was the property of defendant, and no testimony that this or any other ladder was placed or allowed to be placed by the electric company at or against the transformer box later than three or four days before the moment of the accident. The mere fact, as the learned court below correctly states, if it be a fact, that the company had placed the ladder against the building a few days before, would not be evidence that it or its employees had subsequently put it there. We agree with the conclusion of the court in banc that there was no evidence whatever to go to the jury, upon which to base a claim of liability against defendant company.

The single assignment of error presented by appellant directed against the entry of judgment non obstante veredicto is overruled, and the judgment is affirmed.