Dornick et ux. *v.* The Wierton Coal Co., Appellant.

Argued April 20, 1933.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

E. C. Higbee, and with him William Brown Higbee of Higbee, Matthews & Lewellyn, for appellant.

H. S. Dumbauld, and with him E. D. Brown, for appellee.

OPINION BY BALDRIGE, J., July 14, 1933:

This action is to recover damages for the death of appellees' son, seven years of age, caused by his falling into a reservoir on July 12, 1930, and drowning. The reservoir, 78 feet in diameter, is located on the side of a hill, and is owned and used by defendant. It is surrounded by a concrete wall, varying in height above the ground from a few inches to several feet. Immediately outside of, and extending 3 to 4 feet above, the concrete, is a barbed wire fence, with 5 to 9 wires, depending on the height of the wall above the ground, attached to posts 7 feet 4 inches apart. Immediately west of the reservoir there are a number of bushes growing on a slope, and just beyond is vacant, level ground, used for ball games, which extends to a concrete walk, which is 130 feet distant from the reservoir, leading from a community hall to a public road. On the far side of the walk is an equipped playground. Beyond the playground is a store, 307 feet from the reservoir. East of the community hall, and nearer to the reservoir, are a boarding house and dwelling. There are also other buildings in that general neighborhood.

The deceased and three other boys had left the play-

ground and proceeded on the public highway, running along the northerly side of the ball field, a distance of 300 feet or more to a point opposite the reservoir. After playing "tag" in that vicinity for a short time, they observed a block or "caddy" floating on the water in the reservoir, which they sought to get. To reach the wire fence they were required to cross an open concrete drain and go about 20 feet. Stanley Dornick and Joseph Di Concilio crawled through the fence, with the assistance of their two companions, by lifting one of the wires and lowering another. Between the concrete and the water's edge, the wall was constructed of bricks, which were wet and slippery, and, as the two boys were going around the edge of the "cone-shaped" reservoir, both slipped and fell into the water and were drowned.

The plaintiffs alleged at the trial that the defendant company was negligent in maintaining an inadequate fence around a reservoir where children were permitted to play. There was evidence that two of the wires in the fence were broken, due to the falling of a tree; but these broken wires were on the other side of the reservoir and in no way contributed to the accident. The wires in the other portion of the fence were described by one witness as follows: "They are all loosely stretched. You can take them and spread them apart." Another witness said: "Well, they was not naturally tight, and they was not loose. You could spread them a little." "Loose" is a relative term and does not convey a very clear understanding of their condition. The photographs, offered in evidence by plaintiffs, do not indicate any sagging of the wires, and the admitted fact is that it was necessary to use force to spread them sufficiently for the boys to crawl through. Entrance, therefore, was not gained by an opening, inviting admission, but by the use of force. The defendant was not required to maintain a fence

with taut, strong wires, so closely strung as to make it an impenetrable barrier. If we assume this reservoir was accessible to the public in such a way that the boys were impliedly invited to use it, they were not trespassers, and the plaintiffs were required to show only a lack of care that an ordinary prudent person would have exercised under the cicumstances as they existed: Millum v. Lehigh & Wilkes-Barre Coal Co., 225 Pa. 214, 73 A. 1106. If, on the other hand, it was not open to the public, as contended by the defendant, the boys were intruders, notwithstanding their tender years, and then it was incumbent upon the plaintiffs to show a wanton or wilful negligence: Rodgers v. Lees et al., 140 Pa. 475, 21 A. 399; Thompson v. B. & O. R. R. Co., 218 Pa. 444, 67 A. 768; Perrin et al. v. Glassport Lbr. Co., 276 Pa. 8, 119 A. 719; Feehan v. Dobson, 10 Pa. Superior Ct. 6. The evidence clearly indicates that the enclosed ground could not be regarded as part of the property which the public was impliedly or expressly permitted to use. True, there was testimony, on the part of the plaintiffs, that two or three times a week a batted or thrown ball would be rescued by one or more persons crawling through the wires, and on one occasion boys were observed inside the enclosure endeavoring to catch frogs. They were intermittent occurrences, however, and, as said in Fitzpatrick v. Penfield, 267 Pa. 564, 573, 109 A. 653, were not "continued enough to presuppose an invitation to use the lot as a special or general recreation place, or to stamp it as a playground."

In Colligen et al. v. Phila. Elec. Co., 301 Pa. 87, 92, 151 A. 699, the court said: "It is not sufficient that the instrumentality or condition may be a source of danger to children, but it must be of such a nature that danger to children is reasonably to be apprehended; ......
that the attractive nuisance rule should apply, the

property, appliance or condition in question must be so accessible to children that it should reasonably be anticipated they will come upon it, and it is not sufficient that it is possible for children to reach it."

We think the evidence does not justify the conclusion that the defendant was derelict in its legal duty to take adequate precaution to reasonably protect the public. The boy, unfortunately, was where he had no right to be and the fence warned him of that fact. Nor in our view, does this case come within the attractive nuisance doctrine, as the reservoir was not inherently dangerous. It was not an object or instrumentality, by which, if left unguarded, a boy, with his natural curiosity to investigate, may, by playing with it, setting it in motion, or running against it, sustain an accident. Of course, a boy could and did fall into it, but such an accident may occur in any pond or stream. As was said in Gillespie v. McGowan, 100 Pa. 144, 150: "There are streams and pools of water where children may be drowned; there are inequalities of surface where they may be injured. To compel the owners of such property either to enclose it or fill up their ponds and level the surface so that trespassers may not be injured would be an oppressive rule ...... We all know that boys of eight years of age indulge in athletic sports. They fish, shoot, swim, and climb trees. All of these amusements are attended with danger, and accidents frequently occur. It is part of a boy's nature to trespass, especially where there is tempting fruit, yet I never heard that it was the duty of the owner of a fruit tree to cut it down because a boy trespasser may possibly fall from its branches." ...A case which closely approaches, in its facts, the one at bar, and rules it in principle, is that of Ansell v. Phila., 276 Pa. 370, 120 A. 277. There, a boy, 14 years of age, was drowned by falling into a pond of water, formed by the filling, from springs and other

sources, of an abandoned quarry, on land taken for park purposes. A used roadway ran the length of the body of water, which was enclosed by a two-rail fence. The boy crossed the barrier, and, while playing with his dog, fell into the pond. The court below entered a nonsuit, and the Supreme Court, per curiam, said: "We are not convinced of error; a pond, artificial or otherwise, does not differ from lakes and streams found everywhere, all of which are attractive to children and present common dangers. The owner of premises containing something attractive to children is not always liable in damages because of injuries to one yielding to the attraction; it depends upon the character of the thing in question, and a pond of water, guarded from the roadway like the one under consideration, cannot properly be placed in the same category with dangerous machines, electrical appliances and similar things."

After giving this case careful consideration, we are of the opinion that the evidence was insufficient, under the facts presented, to justify the finding that defendant was guilty of any negligence.

Judgment is reversed, and now entered for defendant.