Pietros et ux. *v.* Hecla Coal & Coke Company, Appellant.

Argued May 2, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Thomas Watson,* with him *R. M. Steffler,* for appellant.

*J. Thomas Hoffman,* with him *J. Albert Reed,* for appellee.

OPINION BY RHODES, J., July 18, 1935:

The plaintiffs brought an action against the defendant to recover for the death of their minor son, who was eight years and five months old at the time of the accident which resulted in his death.

The defendant was the owner of a tract of land of approximately eighty-five acres, in Washington County, Pennsylvania, upon which was situate the small mining village of Besco, consisting of some twenty-three houses scattered about an opening in the woods. Some of these houses the defendant owned; others had been sold to various individuals. The plaintiffs rented house No. 13 from Joseph Sabo, the owner. The plaintiff, Antony Pietros, was never employed by the defendant, but worked as a miner for another coal company. The

defendant had leased the unmined coal underlying this tract to the Horner Coal Company which was operating the mine at the time of the accident.

Plaintiffs' son met his death by drowning as the result of falling into a hole, which was filled with water, on the defendant's property. On February 21, 1930, about 4:30 P. M., plaintiffs' son, Chester Pietros, together with three other boys, was playing about this water hole, floating chips of wood on the surface of the water, pushing them with sticks and pretending that they were boats. As the plaintiffs' son stood with his feet extending partly over the edge of the hole, the ground beneath him gave way; he fell in and was drowned.

This hole was about five hundred feet from house No. 13, in the village of Besco, which was occupied by the plaintiffs. There was no public road leading to this house. Access to the county road, a thousand feet distant from the village, was over defendant's land by means of various paths and an informal vehicle road. The water hole was approximately fifteen feet distant from the side of this trail or roadway used by vehicles in going to and from the village. This vehicle road extended irregularly from the county road to the open space on which the various houses bordered. As one entered the village from the county road, this hole was on the right hand side of that portion of the informal vehicle road which connected the county road and the village.

Plaintiffs' evidence shows that this hole was the result of a subsidence of the ground, caused by mining underneath; that the hole existed for about two or three weeks prior to Christmas, 1929; that it did not become filled with water until one week after Christmas; and that it so remained until the date of the accident. The water hole, about six feet deep and fifteen feet in diameter, was unguarded and plainly visible to anyone

approaching it. The plaintiffs testified that they often warned their son not to play near it. According to the plaintiffs' testimony, the children of the village (about twenty-five in number) usually played close to the houses. Some of the plaintiffs' witnesses testified that they played "all over the place"; but plaintiffs produced no evidence that the boys habitually played around this hole, either before or after it was filled with water.

The plaintiffs recovered a verdict in the court below, and the court entered judgment thereon. Defendant appeals, and submits eleven assignments of error. The eighth assignment of error relates to the court's refusal to give binding instructions in favor of the defendant; and the eleventh assignment of error relates to the court's refusal to enter judgment in its favor non obstante veredicto. In view of our conclusion, we need only consider whether the case should have been submitted to the jury; and in disposing of this question, we are bound to consider the evidence from the point of view most favorable to the plaintiffs, for any conflict of testimony developed on the trial has been decided in their favor by the verdict. Balser v. Young et al., 72 Pa. Superior Ct. 502.

The plaintiffs alleged that the defendant was negligent in permitting a dangerous hole to remain unguarded, in failing to fill said hole, in failing to post danger signs, in failing to enclose said hole so that children traveling near it, or playing in the vicinity, would not be able to approach it if attracted thereto; and that the land where the hole existed had been used for many years as a general playground for the children of the village of Besco, with the knowledge and consent of the defendant.

There is no evidence to show that the defendant had any actual knowledge or notice of the existence of the water hole where the accident happened, prior to February 21, 1930. The hole was about fifteen feet from

the roadway used by some of the people of the village to reach the county road; but there is no testimony to indicate, or from which an inference may be drawn, that its proximity to the roadway created an inherently dangerous condition. It was plainly visible, and could not be construed as a menace to those using the roadway in going to and from the village.

For the plaintiffs to recover there must be some evidence of negligence on the part of the defendant; and negligence is not to be presumed from the bare fact that the accident happened on the defendant's land. Schiffer v. Sauer Company et al., 238 Pa. 550, 86 A. 479. "To establish negligence, it must appear that some duty has been unperformed, and without the violation of the duty there can be no negligence. A duty may be imposed either through the relation of the parties or by statute, and, where there is a duty or an obligation, some right exists in another": Fitzpatrick v. Penfield, 267 Pa. 564, 569, 109 A. 653, 655. What duty, if any, did the defendant owe to the plaintiffs' son in this case? If, in playing around this water hole, the boy was no more than a trespasser, or a mere licensee, the only duty owed to him by the defendant was that the defendant abstain from inflicting on him an intentional, wanton or wilful injury. Thompson v. Baltimore & Ohio Railroad Company, 218 Pa. 444, 67 A. 768; Gillespie v. McGowan, 100 Pa. 144; Schiffer v. Sauer Company et al., 238 Pa. 550, 86 A. 479; Dornick et ux. v. Wierton Coal Co., 109 Pa. Superior Ct. 400, 167 A. 617. In the case of Fitzpatrick v. Penfield, supra, p. 571, it was held that: "There is no liability for injury to such person [a trespasser] (except for wantonness); the owner owes no duty, either to an adult or a child of tender years, and because of the absence of a relation which imposes a duty there is no right of action. The underlying principle of the law in such cases is that the injured person was where he had no right to be;

the owner was using his property in a lawful manner for a lawful purpose, and, unless wantonness or wilfulness be shown, the owner is not liable. He is not bound to keep his premises in a suitable condition, and, as against trespassers, he need not take any of the ordinary precautions to safeguard places on his property: B. & O. R. R. Co. v. Schwindling, 101 Pa. 258; Thompson v. B. & O. R. R. Co., 218 Pa. 444; Gillis v. P. R. R., 59 Pa. 129, 141; Gramlich v. Wurst, 86 Pa. 74; Rodgers v. Lees, 140 Pa. 475; Selve v. Pilosi, 253 Pa. 571. Ordinarily, the tender age of a child cannot have the effect of raising a duty where none otherwise existed, and the rule throughout the United States is that the mere fact a trespasser is a child will not create or impose on the owner of a property any duty to keep his premises safe; especially is this true in this State, where the owner does not erect on his premises an attractive appliance, or permit the land to be used as a playground for such length of time as to presuppose an invitation or permission to occupy the premises in this manner. When so used, ordinary care must be exercised to keep the premises in safe condition. Of course, this does not mean occasional or intermittent occupancy of another's ground by children as a playground—or almost every foot of open or fenced land, would be under the exception to the general rule, and the general rule would then be the exception."

The appellee contends that the premises in question had been used as a playground by children for such a length of time as would place upon the defendant the duty of using ordinary and reasonable care for their safety. Where the owner of land allows it to be used by children as a playground, for a sufficient period of time and in such a way that the children are impliedly invited to use it, the plaintiffs are required to show only a lack of care that an ordinarily prudent person would have exercised under the circumstances as they existed.

Kay v. Pennsylvania Railroad Co., 65 Pa. 269; Henderson v. Continental Refining Company, 219 Pa. 384, 68 A. 968; Millum v. Lehigh & Wilkes-Barre Coal Company, 225 Pa. 214, 73 A. 1106; O'Leary v. Pittsburgh & Lake Erie Railroad Company, 248 Pa. 4, 93 A. 771; Counizzarri v. Philadelphia & Reading Railway Company, 248 Pa. 474, 94 A. 134; Balser v. Young, supra; Fitzpatrick v. Penfield, supra; Restatement of Law, Torts, §339.

The evidence in this case does not disclose any such use of the land, immediately surrounding the water hole, by the children of the village of Besco, as would make it a recognized playground, or put the defendant upon notice of that fact. According to the plaintiffs' own testimony, the hole did not exist until two or three weeks before Christmas of 1929, and was filled with water for only two months preceding the accident. Although witnesses for the plaintiffs testified that the boys played all over the camp, nowhere is there any testimony that they played around this hole at any time previous to the accident. There is no evidence that this particular piece of land was used as a playground by the children prior to the subsidence. It was rough and uneven and unsuitable for ordinary playground purposes. The children of the village may have frequented it, from time to time, as they undoubtedly did other portions of the eighty-five acre tract of the defendant; but its use was not often or continued enough to presuppose an invitation to use the land around the water hole as a special or general recreation place, or to stamp it as a playground. Fitzpatrick v. Penfield, supra, p. 573. See, also, Dornick et ux. v. Wierton Coal Co., supra, p. 403.

The water hole was approximately fifteen feet from the lane leading out of the village or settlement. It was not sufficiently near the roadway to be a hazard to those going to and from the houses along the road-

way. The photographs offered in evidence by the plaintiffs indicate that it was on the edge or outskirts of the opening in which the houses were situate. It was also unconcealed and plainly visible, and, although unguarded, could not be considered inherently dangerous and an attractive nuisance to children. What was said by Judge BALDRIGE in the case of Dornick et ux. v. Wierton Coal Co., supra, p. 404, applies to the facts in the case at bar: "It was not an object or instrumentality, by which, if left unguarded, a boy, with his natural curiosity to investigate, may, by playing with it, setting it in motion, or running against it, sustain an accident. Of course, a boy could and did fall into it, but such an accident may occur in any pond or stream."

The plaintiffs' son, in playing around this water hole, had no greater rights than a trespasser or a mere licensee. The evidence does not show that the defendant violated any duty which it owed to the plaintiffs' son.

This case is analogous both on its facts and in principle to that of Gillespie v. McGowan, supra, wherein the Supreme Court stated, p. 150, as follows: "We are unable to see anything in this case to charge the defendants with negligence in not enclosing their lot or guarding the well. There was no concealed trap or dead fall, as in Hydraulic Company v. Orr. The well was open and visible to the eye. No one was likely to walk into it by day, and this accident did not occur at night. A boy playing upon its edge might fall in, just as he might in any pond or stream of water. In this respect the well was no more dangerous than the river front on both sides of the city where boys of all ages congregate in large numbers for fishing and other amusements. Vacant brick yards and open lots exist on all sides of the city. There are streams and pools of water where children may be drowned; there are inequalities of surface where they may be injured. To compel the owners of such property either to enclose

it or fill up their ponds and level the surface so that trespassers may not be injured would be an oppressive rule. The law does not require us to enforce any such principle even where the trespassers are children. We all know that boys of eight years of age indulge in athletic sports. They fish, shoot, swim, and climb trees. All of these amusements are attended with danger, and accidents frequently occur. It is part of a boy's nature to trespass, especially where there is tempting fruit, yet I never heard that it was the duty of the owner of a fruit tree to cut it down because a boy trespasser may possibly fall from its branches."

From a careful review of the evidence in this case, we are of the opinion that it discloses no violation of a duty on the part of the defendant. There was no evidence from which a jury could find that the defendant had done anything from which an invitation to others to use its property could be inferred, or that the property in question had been used as a public playground. Saar v. American Glass Specialty Company, 55 Pa. Superior Ct. 282; Selve v. Pilosi, 253 Pa. 571, 98 A. 723.

We are of the opinion that the defendant was entitled to binding instructions, or to judgment in its favor, notwithstanding the verdict.

The eighth and eleventh assignments of error are sustained.

The judgment is reversed, and is here entered for the defendant.