Riebel et al. *v.* Land Title Bank & Trust Co., Appellant.

Unger et al. *v.* Land Title Bank & Trust Co., Appellant.

Argued October 14, 1940.

Before Keller, P. J. Cunningham, Baldrige, Stadtfeld, Parker, Rhodes and Hirt, JJ.

*Michael A. Foley,* with him *Henry I. Koplin,* for appellant.

*Franklin G. Banks,* for appellees.

OPINION BY PARKER, J.:

This action in trespass is one of those frequently recurring cases where plaintiffs seek to impose a liability on an owner of land for bodily harm to young children, while trespassing on the land, caused by an artificial condition maintained thereon. The case was tried before a judge without a jury and small judgments were entered in favor of the minor plaintiffs. We are all of the opinion that the judgments should be reversed.

The defendant, on September 11, 1938, was in possession of a lot in the City of Philadelphia on which there was a vacant brick dwelling. The portion of the lot fronting on North 8th Street was wholly occupied by the building and there was a vacant space in the rear. Access to the open space, which was littered with rubbish, was had from an alley, a fence at that point having been broken down. The two minor plaintiffs, eight or nine years of age, were playing "tiger", which we understand is a game of tag, and were running on the premises when some part of the rear wall of the building collapsed and bricks fell upon the boys causing comparatively light injuries, the total damages awarded plaintiffs being $300.

The substance of plaintiffs' claim as set forth in their statement is that the land was in possession of defendant, that it maintained the premises "in a dangerous and defective condition for a long period of time", and that while the plaintiff children were playing in the yard a section of the rear wall collapsed and the boys were injured by falling bricks. Both pleadings and evidence were unusually meager and the witnesses dealt with generalities and conclusions rather than facts.

The proofs covered a somewhat broader field than the pleadings. An examination of the evidence, all of which was produced by the plaintiffs, shows that the plaintiffs relied for a right to recover upon the claim that they had established by their testimony that defendant's premises were used with "sufficient frequency and continuity by children to warrant regarding said premises as a playground." The statement of question involved and the argument suggest no other theory which could support their claim than that the premises were and had been a playground.

In all actions such as this, before the possessor of land may be held liable for injuries to trespassing children, it must appear that he has negligently maintained the condition which caused the injury, even though the land be a playground. Such negligence is not to be inferred merely because an accident has occurred. As we have indicated, the evidence is exceedingly meager as to the condition of the wall prior to the accident and as to what caused it to fall. The boys were running on the premises, some portion of the rear wall fell, and some bricks were thrown on the boys. Robert Riebel, the father of one of the boys, testified that he passed through the alley at the rear of the lot frequently. He testified: "In the back of the house were all open windows, the windows out of the back ...... You could look in the window and see clear down in the cellar where there was no floor. The flooring was out ...... I don't recollect much about the back wall, but it seems there was a window there that was out, out altogether; there was no sash and no framework, the sash and framework were out. On the second floor there was a bay window and the windows were out in that. They had either been broken out or taken out."

Mrs. May Sheeron, a nearby neighbor, testified as follows: "All the insides of the building were almost out, the windows were out and the back of it was half down." The court took a hand in the examination and

attempted to find out what the condition of the wall was, with the following result: "Q. That is the conclusion, what was the condition of the wall? A. It was half falling down. Q. What do you mean by that? A. It was almost falling down, almost down." Later she stated that part of the back of the house fell down and bricks were thrown on the boys. The witness was pressed by counsel and the court for a statement that would show the condition of the wall and what occurred, and she was unable to give any specific facts as to the prior condition of the wall, saying that she could not explain any more than she had.

Unless the defendant knew, or ought to have known, that the condition of the wall was such that it was likely to fall and injure one in the vicinity, he is not liable. There is not a suggestion of actual notice to the possessor of the land that the wall was in a dangerous condition. Plaintiffs rely entirely upon inference to charge the defendant with notice. The fact that the wall fell is not of itself sufficient: *Kehres v. Stuempfle*, 288 Pa. 534, 539, 540, 136 A. 794; *Bechtel v. Franklin Trust Co.*, 120 Pa. Superior Ct. 587, 182 A. 800. Walls of abandoned buildings have been known to stand not only for years but for centuries. It was incumbent on plaintiffs to show some condition existing before the accident that would lead a person exercising reasonable and ordinary care to believe that the wall was likely to fall. Plaintiffs rely on the facts that the windows were out, that some part of the first floor was broken through so that one could look into the cellar, and that the building was unoccupied. The statement of Mrs. Sheeron that the wall was almost falling down was of no weight for she could not give any reason for her conclusion and she did not qualify as an expert. If it be suggested that the bricks might have come from around the windows, the answer is that there was no testimony that the breach was in that place.

The judge, sitting without a jury, was required to base his conclusion upon facts and not conjecture. It was but reasonable to require some proof of the nature of the wall, whether it was a solid brick wall or a veneered wall, whether the bricks or cement were loose or the foundation was insecure, or other similar conditions from which one could reasonably conclude that it was likely to fall. The record is void of any such information. In short, the court was shown neither the nature of the wall, its condition, what made it fall, nor even what portion of it fell. Although the plaintiffs' pleadings indicated that the plaintiffs would show that the building had been condemned, there was not any evidence received to substantiate that allegation. We might add that the evidence indicates that the building was unoccupied for only a year or two. We fail to find any evidence which would support a finding that defendant should have known that the part of the rear wall of the building which fell was not in a safe condition. It must be remembered, in considering the liability of possessors of land to trespassers or gratuitous licensees, that there is no general duty on the possessor to inspect for the purpose of ascertaining whether there are unknown conditions which would make the premises dangerous.

In addition to what we have said, it is apparent that the minor plaintiffs were trespassers. The plaintiffs, in order to fix liability on the defendant, relied upon proofs intended to show that this yard had been a playground for children for a considerable period. These proofs at best merely showed that children regularly ran over the lot in playing their games. One of the minors, on being asked whether he had played there before, said he had played "running tiger" there after the fence was down. Mrs. Sheeron stated that she had heard boys playing and shouting in the vicinity almost every day before the accident and had seen them

on these particular premises. The applicable rule is stated by the Supreme Court in *Fitzpatrick v. Penfield,* 267 Pa. 564, 572, 109 A. 653: "The underlying principle of the law in such cases is that the injured person was where he had no right to be; the owner was using his property in a lawful manner for a lawful purpose, and, unless wantonness or wilfulness be shown, the owner is not liable. He is not bound to keep his premises in a suitable condition, and, as against trespassers, he need not take any of the ordinary precautions to safeguard places on his property: *B. & O. R. R. Co. v. Schwindling,* 101 Pa. 258; *Thompson v. B. & O. R. R. Co.,* 218 Pa. 444; *Gillis v. P. R. R.,* 59 Pa. 129, 141; *Gramlich v. Wurst,* 86 Pa. 74; *Rodgers v. Lees,* 140 Pa. 475; *Selve v. Pilosi,* 253 Pa. 571. Ordinarily, the tender age of a child cannot have the effect of raising a duty where none otherwise existed, and the rule throughout the United States is that the mere fact a trespasser is a child will not create or impose on the owner of a property any duty to keep his premises safe; especially is this true in this State, where the owner does not erect on his premises an attractive appliance, or permit the land to be used as a playground for such length of time as to presuppose an invitation or permission to occupy the premises in this manner. When so used, ordinary care must be exercised to keep the premises in safe condition. Of course, this does not. mean occasional or intermittent occupancy of another's ground by children as a playground—or almost every foot of open or fenced land, would be under the exception to the general rule, and the general rule would then be the exception. The amount of use that will bring otherwise private ground within the playground rule must depend to a large extent on the circumstances of each case. It may be said that the use contemplated is such as to cause the place to be generally known in the immediate vicinity as a recreation

center, and its occupancy should be shown to be of such frequency as to impress it with the obligation of ordinary care on the part of the owner."

The proofs in this case come far short of showing that these premises were generally known as a recreation center. They were not of a size suitable for that purpose. The use of the premises was not of such a nature that we may presuppose an invitation by the owner to use the ground as a recreation place or stamp it as a playground: *Pietros v. Hecla Coal & Coke Co.*, 118 Pa. Superior Ct. 453, 459, 180 A. 119. The fair import of all the testimony is that boys, in playing their games, ran across this lot. This is a practice generally known to exist everywhere. It is a most usual experience to see healthy boys in playing their games run over unfenced premises day in and day out. To extend the playground rule to such situations would be contrary to the whole tenor of the decisions of the Supreme Court and of this court. There is an entire absence of those conditions from which it might be assumed that the owner either invited or acquiesced in the use of his premises by trespassers.

Judgment reversed, and it is directed that judgment be entered for the defendant.

PER CURIAM, January 30, 1941:

The foregoing opinion was prepared by Judge PARKER before his accession to the Supreme Court. It is now adopted and filed as the opinion of the court.