# Di Meglio, Appellant, v. Philadelphia & Reading Railway Company.

*Negligence—Railroads—Infants—Tracks on city street—Boy playing on car.*

In an action against a railroad company to recover damages for personal injuries sustained by plaintiff, a boy ten years of age, it appeared that while plaintiff and another boy were playing on a box car standing on the siding of the defendant company, located on a city street, a shifting engine approached the car, tender first, for the purpose of making a coupling and that when the engine came in contact with the car, the plaintiff was knocked off and the wheel of the box car or tender of the engine passed over and injured his arm. Although the testimony of the plaintiff was somewhat contradictory, there was enough in his evidence and the other evidence in the case to justify the inference of the jury that as the engine was approaching the car the engineer saw the boy in time to stop the engine and permit him to alight, but that he wilfully and wantonly continued to run the engine at such rate of speed that the force of the impact caused the boy to be knocked off the car and injured. *Held*, that the action of the lower court in entering judgment for defendant n. o. v. was error.

Argued March 23, 1915. Appeal, No. 48, Jan. T., 1915, by plaintiff, from judgment of C. P. No. 3, Philadelphia Co., Sept. T., 1913, No. 4317, for defendant non obstante veredicto in case of Philip Di Meglio, by his father and next friend, Giovanni Di Meglio, v. Philadelphia & Reading Railway Company. Before BROWN, C. J., MESTREZAT, ELKIN and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before FERGUSON, J.

The opinion of the Supreme Court states the case.

Verdict for $500 for Giovanni Di Meglio and $3,500 for Philip Di Meglio. The court subsequently entered judgment for the defendant non obstante veredicto. Plaintiff appealed.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*Albert S. Longbottom,* with him *G. Lawrence Pape* and *Robert J. Byron,* for appellant.

*Wm. Clarke Mason,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, May 3, 1915:

This is an action of trespass to recover damages for injuries to a ten year old child which resulted from his falling off the defendant's freight car and having his arm cut off. The case was submitted to the jury and a verdict was returned for the plaintiff which was set aside and the court entered judgment for the defendant notwithstanding the verdict. The plaintiff has taken this appeal.

The defendant company has a siding located on Front street in the City of Chester. While the plaintiff, a boy about ten years of age, and another small boy were playing on a box car standing on the siding on May 23, 1913, a shifting engine approached the car, tender first, for the purpose of making a coupling. When the engine came in contact with the car the boy was knocked off and a wheel of the box car or tender of the engine passed over and injured his arm which had to be amputated. It is claimed on the part of the plaintiff that, as the engine was approaching the car, the engineer saw the boy in time to stop the engine and permit him to alight, but that he wilfully and wantonly continued to run the engine, regardless of the safety of the boy, at such rate of speed that the force of the impact caused the boy to be knocked off the car and injured. The defendant contends that there was no evidence to show the speed at which the engine was running as it approached the car, nor whether the engineer after he saw the boy could have stopped the engine before it struck the car.

There were three witnesses called by the plaintiff, two in addition to himself, who saw the accident. The de-

fendant called no witnesses. It appears from the boy's testimony that a box car was standing on the siding and that he and another boy were playing on it as the engine approached. He testified in chief that he was on the front or end of the car nearest the engine, that he saw the engineer who called to him three times to get off the car, that when he first called to him to leave the car the engine was about sixty-three feet distant, when he called the second time about half that distance, and when he called the third time about ten feet distant from the car, that the engine was running backwards and "a little fast," and that when the engineer told him to get off he was trying to do so and was knocked off by the collision between the tender and the car. On cross and redirect examination he testified that at the time of the collision he was on the other end of the car and that when he fell the wheel of the car passed over his arm.

Agnes Beckett, plaintiff's witness, testified that at the time of the accident she was walking on Front street in the direction of the box car standing on the siding and the approaching engine, that the engine was running backwards, that when the engine was more than fifty feet from the car she heard the engineer call to the boys two or three times "get to hell off there," that she saw one boy jump off, that she saw the plaintiff on the bumper of the car struggling to get his foot on the step and trying to get down on the side of the car, that the collision occurred and the boy fell off between the tender and the car, that the engine was moving "not at a fast rate of speed but at a fair rate" when she first saw it, that the boys were on the end of the car nearest the engine and that there were no boys on the other end of the car. The witness was less than half of a small square distant from the accident when it occurred. Di Frank, another witness for the plaintiff, testified that he was driving on Front street when the accident occurred, that when he was about forty feet from the engine it was at rest, that when he was within ten feet of it, it started and collided

with the box car, which frightened his horse, and that he saw the boy fall between the tender and the car.

This, in brief, is the testimony relied on by the plaintiff to sustain his action. The learned court submitted the case to the jury in a clear and comprehensive charge, directing their attention to the evidence and instructing them as to the law of the case. He told the jury, inter alia, "that if the boy was standing on the end of the car towards the locomotive and if the engineer was cursing him and making no effort to stop the engine, if he had time to do it, and drove his locomotive recklessly down and bumped it violently into the car, and threw the boy off, that would be a wanton and wilful act upon his part, and the railroad company would be responsible for it." He also said to the jury that if the boy was at the back end of the car, the engineer could not be charged with negligence in reference to something he could not see, that he could only be charged with negligence if the boy was at the end of the car towards the locomotive. The learned judge further said: "If the engine was coming at a rate of speed which would have made it impossible for the engineer to stop the train in the space he had, as soon as he saw the boy, then the engineer could not be charged with negligence."

The verdict being for the plaintiff it must be assumed that the jury found these facts in his favor. The reasons assigned by the learned judge, as stated in his opinion for entering judgment for the defendant, are that the evidence did not show that the engineer, under the circumstances, failed to do his duty, that the evidence was too uncertain and indefinite to show the speed of the engine and as to whether or not the engineer did all he could, by the exercise of care, to prevent the accident.

It will be observed that the judgment was entered for the defendant because the plaintiff had failed to show that the engine was running at such speed that it could have been stopped by the engineer in time to avoid the accident after he saw the boys on the box car. In his

opinion entering the judgment, the learned judge refers
to the testimony of the plaintiff and the woman witness
as the only evidence tending to establish the speed of the
locomotive at the time the engineer first saw the boys on
the car. There were other facts in the case, which doubt-
less the jury considered, which aided them materially in
determining the speed of the locomotive and in finding
that the engineer could have stopped his engine in time
to avoid the collision. The locomotive was at rest, mani-
festly but a short distance from the box car, when Di
Frank arrived at the place of the accident. He saw it
start and heard the collision and saw the boy fall be-
tween it and the car. The track was on a public high-
way which the traveling public could use, imposing a
duty upon the servants of the railroad company to oper-
ate its locomotive and cars with care so as to avoid injury
to persons using the highway. This required the en-
gineer to run his locomotive at such speed, and have it
under such control, that he could stop it within a short
distance. At the time of the collision, the engineer was
backing his locomotive for the purpose of making a cou-
pling with the car which necessarily required him to op-
erate it at a slow rate of speed. It is true, as suggested by
the learned counsel for the appellee, that automatic
couplings cannot be made without impact but it does
not follow that this requires an engineer to run his en-
gine at a high or reckless rate of speed to prevent him
having such control of his engine as to stop it within a
reasonably short distance when necessity requires. The
facts just alluded to seem to have escaped the attention
of the learned trial judge in entering judgment for the
defendant. It is quite true, as he says, that the expres-
sions used by the witnesses in describing the rate of
speed are uncertain and indefinite, but they do not in-
dicate that the engine was moving at a rapid rate of
speed or at a speed which disclosed that the engineer
could not have stopped his engine in time to avoid the
collision. The undisputed evidence shows that the en-

gineer saw the boys on the car when he was about sixty-three feet distant and called to them to get off. He called the second and third times ordering them to leave the car. There is nothing in the testimony of the plaintiff and the woman witness which prevented the jury from finding that after the engineer saw the boys he could not have stopped the locomotive before the collision, or that warranted the learned court in holding, as a matter of law, that he could not do so. The expressions, "a little fast," and "just at a moderate rate of speed," certainly would not warrant the court in holding that the jury could not find that the engineer could have stopped his engine within a distance of sixty-three feet. But if the learned court was justified in its conclusion, the additional facts to which we have referred, taken in connection with the testimony of the two witnesses, amply justified the jury in finding that the engineer had his locomotive under such control that he could have stopped it before it reached the box car.

If, as the jury found, the engineer could have prevented the collision by stopping his locomotive, the evidence warranted the further conclusion of the jury that he made no effort to stop the locomotive but ran it recklessly into the car and knocked the boy under the wheels which passed over his arm causing the injury which resulted in its amputation. Instead of stopping the locomotive, as he was required to do under the circumstances, he, as found by the jury under the instructions of the court, was cursing the boys and making no effort to stop the engine but drove it recklessly and violently against the car resulting in the boy's injury. This, as the court instructed the jury, was a wanton and wilful act upon the engineer's part for which the company was responsible.

The contradictions in the plaintiff's testimony did not justify the court in setting aside the verdict and entering judgment for the defendant. This case is not within the class of cases on which the learned counsel for the appellee relies to support the judgment of the court below.

The learned judge, however, did not base his action on the conflict between the different parts of the boy's testimony.  He testified on direct examination that he was on the end of the car nearest the locomotive and saw the engineer who called to him to get off the car.   He was corroborated as to the end of the car on which he was standing by the testimony of Mrs. Beckett and Di Frank. Under a very vigorous and searching cross examination, he stated that he was at the other end of the car and repeated this on redirect examination.   The jury, however, would have little difficulty in concluding that a child of less than ten years of age, at the time he was injured, might well have been confused two years later when he attempted to testify in regard to the details of the accident.   A little reflection will show that he must have been on the end of the car next the engine, not only from the positive testimony of the two adult witnesses to the fact, but from the further evidence that if he had been on the other end of the car, at the place his testimony apparently indicates, it would seem to have been a physical impossibility for him to have seen the engineer which, we think, it is conclusively shown he did by the fact that it is undisputed the engineer called to him to leave the car.   The appellee's counsel argues that the engineer called to the other boy which might be true, but the plaintiff testifies positively that he, the witness, saw the engineer, and that the latter called to him to leave the car. Mrs. Beckett testifies that if the boy had been at the other end of the car she could not have seen him and Di Frank testifies that the boy fell between the locomotive and the car.

The judgment is reversed, and the record remitted to the court below that plaintiff may have judgment on the verdict.