Osalek *v.* Baltimore & Ohio Railroad Co., Appellant.

554

Argued January 14, 1929. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Kingsley Montgomery,* for appellant.—Where a boy is struck by a train and injured, he cannot recover for his injuries if no wanton or wilful act of the trainmen is shown: Gray v. R. R., 293 Pa. 28; Conn v. R. R.,

288 Pa. 495; Hojecki v. R. R., 283 Pa. 444; Thompson
v. R. R., 218 Pa. 444; Weatherbee v. R. R., 214 Pa. 12.

*A. J. DiMedio,* with him *John E. McDonough,* for
appellee, cited: Petrowski v. Ry., 263 Pa. 531; Dunne
v. R. R., 249 Pa. 76; Oberndorf v. Ry., 53 Pa. Superior
Ct. 74; Stephanik v. R. R., 243 Pa. 43.

OPINION BY MR. JUSTICE SADLER, February 11, 1929:
Paul Osalek, a boy between eight and nine years of
age at the time of the accident which gave rise to this
suit, was injured by falling beneath the car of a freight
train operated by the Baltimore & Ohio Railroad Com-
pany. An action to recover damages was instituted
by his father, on behalf of himself, as well as next friend
for his son, and compensation to the amount of $2,999
asked for both. The verdicts rendered were in favor
of each plaintiff for $5,000. These were subsequently
reduced to $1,500 for the father and $2,999 for the son,
and judgments entered thereon. Binding instructions
for the defendant had been refused, and, upon the close
of the charge, counsel asked that the "evidence be tran-
scribed, certified and filed, and be made a part of the
record," and that "judgment on the whole record" be
entered "in favor of the defendant and against the
plaintiffs." Two days later a formal motion for judg-
ment n. o. v. was presented, as was one asking for a
new trial. The court was of opinion that the former
was insufficient under the practice fixed by the Act of
April 22, 1905, P. L. 286, in that no certification of
the record was asked, though such request had previous-
ly been made, but with this conclusion we cannot agree.
The motion was also overruled on the merits, and the
correctness of the latter conclusion need alone be con-
sidered.

A description of the locus in quo is necessary to a
proper understanding of the facts involved. The de-
fendant operated a railroad which crossed Fairview

Road with four tracks. At that point a day-time watchman was employed to protect pedestrians and vehicular traffic. From the main track a switch departed on a curve southwestwardly to the plant of the Baldwin Locomotive Works, a distance of 1,833 feet, crossing Chester Pike and a parallel highway known as Holland Street. It passed a lumber yard, and the house of one Roberts, at a point shown by the measurements to be about 940 feet from the avenue first named. Parallel with the track, about three feet distant, was a used path, but there was no crossing over the railroad until a point considerably south of the place of the accident was reached. The plaintiff said, when hurt, he was a hundred feet north of the Roberts home, and his witness, Roman, fixed the location at the dwelling referred to. Roberts and his wife, though called by defendant, were uncontradicted, except as noted, when they stated the boy fell immediately in front of their residence.

Plaintiff's statement claimed the train had stopped at the first switch below Fairview Road, where the boy got on the box car, which was thereafter started. It was averred that he was trying to pass over to the other side of the track on a permissive way,—a fact not established by any testimony,—but that the cars continued to move, making it impossible to alight. After proceeding about fifty yards, "a brakeman, watchman, conductor in charge of the train, and employed in behalf of the defendant company, shouted a threatening remark, and made a step in the direction of driving him off the train," as a result of which the child was frightened and fell. In considering the proof of the negligence averred, we disregard the evidence of Roberts and his wife, apparently disinterested witnesses, who were at the place of the accident, and testified that the boy was attempting to mount the moving cars when he slipped, as we do also the testimony of the engineer, fireman, brakeman and conductor, none of whom saw the boy before the time of the fall, or were shown to

have spoken or called to him while he was standing on the step of the box car.

The plaintiff's case rested on his own testimony and that of two youthful companions, admittedly trespassers on the train, having mounted it while at a stop nearer Fairview Road, and another boy, Roman, aged at the time thirteen, who stated that he was on the footway adjoining the tracks, and first saw the injured child on the then moving train. The averment that the injured boy was attempting to cross a train, temporarily standing on a permissive way, from one side of the track to the other, was entirely unsupported. Had the contrary been true, and the train was moved without warning, causing the injury, a recovery might well have been asked: Smith v. P. & R. Ry. Co., 274 Pa. 97. At the most, the jury could have found that he had been on a footway parallel with the railroad, from which he departed and attempted to board the box car, and is therefore to be treated as a trespasser: Conn v. P. R. R. Co., 288 Pa. 494; Gray v. P. R. R. Co., 293 Pa. 28. According to the testimony of the boy, and his own witnesses, he was at the time of the accident "stealing a ride" on the cars, when he unfortunately fell and his foot was cut off.

The only evidence tending to show lack of care is the testimony that Cook, a watchman regularly employed at the Fairview cross avenue, 900 feet distant, was at the time walking to his place of work on the footway by the track, already referred to, and observing the plaintiff on the moving train, called to him to "get off of there," which caused the fright and fall with the resulting injury. Though earnestly contended to the contrary, there was sufficient evidence to show that Cook was acting within the course of his employment if he made efforts to protect the property of his employer from trespassers (Dunne v. P. R. R. Co., 249 Pa. 76; Stidfole v. P. & R. Ry. Co., 261 Pa. 445), and where the act of such a person can be found to be within

the line of performance of duties imposed, or permitted to be assumed, the master is responsible for injury resulting from the doing of a wantonly careless or intentional act: Petrowski v. P. & R. Ry. Co., 263 Pa. 531. The defendant is not to be held liable, however, unless some wrongful conduct of its employee, causing the loss, is proven, and this is true though the plaintiff be a minor: Conn v. P. R. R. Co., supra; Gray v. P. R. R. Co., supra. In defense, Cook swore he had never seen the plaintiff, and that he had not called to him, but his evidence, for the purposes of this appeal, must be disregarded.

There is no duty on the part of employees of the railroad to search trains for infant trespassers and remove them: Petroski v. P & R. Ry. Co., supra. If, however, such be observed in a place of danger, care must be taken to prevent injury (Trevethan v. P. & R. Ry. Co., 244 Pa. 414); thus, it would be negligence to back an engine against a boy engaged at play on a standing car: DiMeglio v. P. & R. Ry. Co., 249 Pa. 319. If the child is not seen, or the train cannot be brought to a standstill when observed, so as to furnish protection, no liability attaches (Hojecki v. P. & R. Ry. Co., 283 Pa. 444; Minute v. P. & R. Ry. Co., 264 Pa. 93), but care must be taken not to eject the trespasser without stopping, or using due precautions for his safety: Stephanik v. B. & O. R. R. Co., 243 Pa. 43. If it appears that by some overt act the infant was forced from the moving cars, or such threats or violence were used as would lead him in fright to leap therefrom to his injury, the company becomes liable. Such has been held where the brakeman threw a stick at the infant causing him to lose his grasp (Dunne v. P. & R. Ry. Co., supra), or a club and tried to chase him off (Petrowski v. P. & R. Ry. Co., supra; Terletski v. P. & R. Ry. Co., 264 Pa. 35), attempted to eject him by throwing lumps of coal (Minute v. P. & R. Ry. Co., supra), or actually struck or attempted to strike him: Stidfole v. P. & R.

Ry. Co., supra. Similar rulings are made when the trespasser, found on a motor truck, was not merely ordered away, but forced to jump because of lashing with a whip: Lafferty v. Armour, 272 Pa. 588; Weiermiller v. American Ice Co., 89 Pa. Superior Ct. 278. But our cases do not go as far as to hold that a mere order to get off, without any indication of attempt to use force, is evidence of such wilfulness on the part of the employee as will make his master liable for the injury resulting to the lad who lets go his grip and falls (Hartigan v. Public Ledger, 291 Pa. 588), for there must be proof of such conduct as to indicate wantonness before a recovery can be had: McGinnis v. Peoples Bros., 249 Pa. 335; Perrin v. Glassport Lumber Co., 276 Pa. 8.

There was no pretense that any overt act was committed by Cook when he called, except that he "waved his arm," being at the time some distance away. An attempt was made to strengthen this evidence by having plaintiff describe the tone of voice used. This leading question was asked "Did he holler at you low and softly or was it one loud and harshly?" In answer he said: "It was loud and mean." In the same way, Roman was questioned: "At the time he shouted, was that shouted in a quiet, low voice, or was it loud?" and he said: "It was very loud." Bolista was asked whether Cook spoke "roughly or gently," and the reply was "rough and loud." Evangelista was fifty feet away, and only heard some one "hollering." None of these boys claimed any overt act was committed, except the waving of his arm by Cook, nor did they say he attempted to follow the train after the boy, and the latter's one of the witnesses says plaintiff did not jump from the car step until ten seconds had passed after the call to get off the train.

In the present case, if the testimony of plaintiffs be taken as true, the boy was not seen by Cook to crawl on the car while it was standing, nor did he have any power to control the train by signal or otherwise after it had started. He called to plaintiff to get off, possibly

in a loud voice, but he did not run after to pull him from the step, or indicate a purpose to use violence by throwing some article, or otherwise. At the most, he signalled with his arm while some distance away, a circumstance similar to the waving of a red flag, as appeared in Hojecki v. P. & R. Ry. Co., supra, where recovery was denied. Though proof in such cases of acts, showing a reckless disregard of the consequences likely to follow, have been held sufficient, since the negligent conduct may indicate wilfulness or wantonness (Minute v. P. & R. Ry. Co., supra), yet the mere calling to the trespassing boy to get off, not followed by any violence in attempting to eject him, or overt deeds showing an intention to use such force, is insufficient.

An examination of the record convinces us that binding instructions for defendant should have been granted as asked for, and, having been refused, judgment n. o. v. should have been entered.

The judgments are reversed and here entered for defendant.