Sakach et ux., Appellants, *v.* Antonoplos.

Argued October 2, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*Charles G. Notari,* with him *Marshall & Marshall,* for appellants.—The record shows evidence of negligence on the part of defendant, and the case was for the jury: Virgilio v. Walker & Brehm, 254 Pa. 241; Jester v. R. R., 267 Pa. 10; Hause v. Transit Co., 38 Pa. Superior Ct. 614; Murray v. Frick, 277 Pa. 190; Durning v. Hyman, 286 Pa. 376; Cronmuller v. Evening Telegraph, 232 Pa. 14; Danko v. Ry., 230 Pa. 295; Kapusciaski v. Coal & Iron Co., 289 Pa. 388; Hauer v. Electric Co., 51 Pa. Superior Ct. 613.

*J. Roy Dickie,* of *Dickie, Kier & McCamey,* for appellee.—The nonsuit was proper: Joyce v. Black, 226 Pa. 408; Murray v. Frick, 277 Pa. 190; Pennington v. Klemanski, 278 Pa. 591; Sorensen v. Advertising Co., 284 Pa. 209.

OPINION BY MR. JUSTICE FRAZER, November 25, 1929:

These two cases were tried together in the court below and so argued here. While we refer in this opinion to the appeal of the wife, what we say and our conclusion applies to both cases.

This case comes before us on appeal by plaintiff from an order of the court below refusing to take off a compulsory nonsuit entered in an action of trespass for damages for injuries sustained by plaintiff by the fall of a moving picture house sign, suspended from a canopy or awning and overhanging a public sidewalk. The cinema building was controlled and operated by defendant, and the sign utilized by him to advertise exhibitions. At the conclusion of plaintiff's case, the court, on motion of de-

fendant's counsel, granted the nonsuit, and the court in banc refused to take it off, assigning as reason for its action a lack of competent evidence to sustain the claim of negligence. Appellant contends the record shows sufficient evidence of negligence to take the case to a jury. That is the sole issue presented for our attention, and in passing upon it we are limited by long-established restrictions. We may not consider the veracity of the witnesses, the conflict of testimony or the weight of the evidence. These are matters exclusively for the jury.

The single question then raised by the record is whether there was any evidence given as to defendant's negligence and by "any evidence" we do not mean a mere scintilla, but such as taken alone could justify a jury in inferring the fact of negligence: Passenger R. W. Co. v. Foxley, 107 Pa. 537.

The court below declares there was not competent evidence to show who placed the sign in its hanging position, how it was so placed or who suspended it, or that defendant's employees were the last to handle it before the accident, and consequently there was no evidence from which a jury could infer negligence.

We are not in accord with these conclusions. It is true, of course, that evidence so indecisive and vague as to be merely conjectural and so devoid of substantial factual basis as to allow a verdict resulting from the capricious and unguided opinions of a jury would be no less than farcical. Where there is sufficient evidence upon which a jury may found a verdict, the question should be submitted to them and it is error in such case to grant a nonsuit: Lehman v. Kellerman, 65 Pa. 489. The test of the sufficiency of the evidence is whether the circumstances detailed are such as to satisfy reasonable and well-balanced minds that the accident resulted from the negligence of the defendant: Ferry v. P. R. T., 232 Pa. 403, 406.

Plaintiff, a woman, was lawfully walking upon the

sidewalk in front of defendant's theatre and at the moment she was passing beneath the sign in question it fell upon her, inflicting serious injury to her. There is no question as to the fact of the accident and none as to the control and management of the moving picture house by defendant. The evidence shows the sign, weighing fifty pounds, was suspended from the awning by ropes which broke an inch and more below the hooks to which it was attached. Evidence that the supporting ropes were too weak and inadequate to bear the weight of the sign was given by a witness who, six months before the accident, was employed as billposter by defendant. He said that two days previous to the accident he was sent by the billposter then in the employ of defendant, to procure a rope which the billposter told him "was to be used for the sign." He procured the rope at a near-by wall-paper store; it was a quarter of an inch thick and taken from a bundle of wall paper; witness saw the "wall-paper man" cut it from a longer rope then being used to tie up the bundle of wall paper; it was about five feet long and he did not pay anything for it. He was asked on cross-examination: "And he [the billposter] told you it was to fasten the sign up? A. Yes." He was asked what the billposter did with the rope thus obtained: "A. Well, it was taken to the back of the Rivoli Theatre. Q. How did it look? What was the condition of the rope? A. It was pretty old. ...... Q. You say you examined the rope after the accident? A. Yes. Q. And you tried it? A. And it broke." He testified on cross-examination he examined the broken rope after the accident in the theatre building in the presence of the billposter. He was asked by counsel for defendant: "Q. You say you saw a piece of twine or rope? A. Yes, sir. Q. Was there any other rope there? A. No, sir. ...... Q. And you picked it up and you made some test with it, did you? A. Yes. Q. What did you— A. I jerked it like that and it snapped. Q. Is that right?

A. Yes." It is true, he did not see the sign put up, but he saw it hanging at the place from which it fell, the day before the accident, and declared he recognized a broken rope he saw in the theatre building after the accident as the rope he had procured two days before from the wall-paper shop.

Another witness, seated in an automobile, a few feet from the theatre building and who witnessed the fall of the sign and its descent upon plaintiff, said he saw at the time broken ends of rope hanging from the awning where the sign had been suspended, about an inch and an inch and a half long. "The sign," he testified, "was broke off the rope." He was asked: "Did you see any pieces of twine on the sign [after it had fallen]?" "A. No, I didn't. There was a couple of men grabbed the sign and put it away."

Another witness, standing in front of the theatre and who also witnessed the accident, testified: "Q. Did you see any rope or cord attached to that sign [after the accident]?" "A. Yes. Q. What did you notice? A. I looked up and seen pieces of rope on these hooks about that long [indicating]. Q. Did you notice any on the sign? A. I didn't look at the sign. It was picked up right away and carried into the show."

It would, we think, be more than difficult to contend that plaintiff had not thus far shown a situation that could not have been produced except by the operation of negligent causes. The test of the power to direct a non-suit is whether there is any testimony from which the jury can necessarily conclude that the facts sought to be proved are established: Baldwin v. Shannon, 43 N. J. L. 596. Plaintiff is not bound to prove more than enough to raise a fair presumption of negligence on the part of defendant and of resulting injury to himself. There was competent evidence to show that a rope or ropes were used in suspending the sign and also sufficient testimony from which a jury could infer that the pieces of rope used were inadequate in strength and quality for the

purpose. It is not contended that the mere fall of the sign was in itself evidence of negligence. Certainly, Joyce v. Black, 226 Pa. 408, cited by appellee, requires more proof than the mere recital of the fact of the accident. In that case an ornamental bracket fell upon plaintiff from a building; the lower court granted and refused to take off a nonsuit. We reversed that judgment and in the course of our opinion said, page 413: "After having shown how the bracket had been attached, it would have been competent for the appellant, if able to do so, to submit proof that the way in which it had been attached and maintained was improper and unsafe, rendering it liable to fall at any time, and that the owner of the building so knew, or ought to have known. He might not have been able to come up to this measure of proof, but it was his right to have the opportunity to do so, if he could." In our opinion in the case before us plaintiff has reached this measure of proof, and it was for a jury to say, from the evidence produced, whether a rope was used to suspend the sign and whether it was adequate in all respects to support it while suspended.

The court below held there was no evidence to show who placed the sign in its hanging position and none to show that defendant's employees were the last to handle it. There is however sufficient evidence in the record to justify a jury passing on those phases of the case. The trial judge has minimized to a degree too low the real value of the evidence on those points as a basis for authorizing a jury to reasonably infer that defendant was responsible for the hanging of the sign, that the rope obtained by the order of his billposter was the rope actually used and that defendant's employees were the last to handle the sign. There is no evidence that others than his employees suspended the sign, and a jury could reasonably infer from other facts shown that defendant's employees did it. The control and management of the theatre were in defendant; he had accordingly the right of control over the means and methods of displaying the

character of films being shown in his theatre and he undoubtedly used the overhead advertising sign method for doing so. Somebody must have hung it there, and, in the absence of all evidence to the contrary, the natural and ordinary inference is that it was placed or caused to be placed in position by his employee, the billposter, who had ordered the rope to be procured and had told the witness who obtained it that "it was to be used for the sign"; and the inevitable sequence of this inference would be, since there is absolutely no evidence to show differently, that the men who put up the sign were those who last handled it before the accident. The jury has the right to take into consideration all the presumptions which, according to the common experience of mankind, arise out of the facts proved: 29 Cyc. 590. The duty defendant owed the public required him to keep his sign suspended so as not to injure persons lawfully upon the public sidewalk beneath it. Appellant's first assignment of error is sustained.

As to the second assignment, the court below was correct in disallowing a witness to give his opinion as to whether the rope was of sufficient strength to support the sign. He had, it is true, tested the broken material after the accident, and it snapped under his test. Possibly he believed the rope was not sufficiently strong, but at the most his testimony could not have been conclusive to a proper degree. This, on the other hand, is a question proper for consideration of the jury. The condition of the rope as to its strength and serviceability as a support for a sign of the character here in question, were shown by witnesses, and a jury would be just as capable of exercising their judgment upon the point as a witness: Crane v. Northfield, 33 Vt. 124; Hartman v. Keystone Ins. Co., 21 Pa. 466, 478.

The judgment of the court below is reversed and a venire facias de novo awarded in both appeals.