Collins *v.* Rosenberg, Appellant.

Argued April 28, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Harold E. McCamey* of *Dickie, Robinson and Mc-Camey*, for appellant, cited: Hughes v. Murdock Storage & Transfer Co., 269 Pa. 222; Hartigan v. Public Ledger, 291 Pa. 588; Perrin v. Glassport Lumber Co., 276 Pa. 8.

*James F. Coyle,* and with him *C. J. Tannehill,* for appellee.

OPINION BY KELLER, J., July 14, 1932:

This is an action of trespass for damages resulting from personal injuries sustained by the minor plaintiff, when the defendant's motor truck, in which the

boy was riding as a trespasser, went over an embankment.

The first question raised by the appellant, that there was not sufficient evidence in the case that the truck belonged to the defendant and that the driver was in his employ, must be resolved against him. The admission of his counsel (p. 26-a) in successfully objecting to an offer of proof for the plaintiffs, made some time after the preliminary offer on this point and its withdrawal: ''And it is further objected to for the reason that counsel for defendant has definitely offered in evidence in this case the admission that Nathan Rosenberg was the owner of this truck and that he employed the driver,'' had the force and effect of a renewal of his former admission and was sufficient evidence of his ownership of the truck and employment of the driver.

We are of opinion, however, that binding instructions in favor of the defendant should have been given the jury, because the evidence in the case did not justify a recovery against him.

The facts are briefly as follows: Defendant's truck was being used in the delivery of the early edition of a Pittsburgh morning newspaper to newsdealers in suburban towns—some 8,000 to 9,000 papers put up in bundles. The driver was a man named O'Neill. He had received explicit instructions not to carry any boys or passengers while making deliveries. The plaintiff, a boy fifteen years old, was a newsboy. He lived on the North Side, Pittsburgh. About three o'clock in the morning of August 31, 1927, the minor plaintiff had finished selling his papers and in company with three other boys got on defendant's truck which was delivering papers as far as Bellevue. The driver told the plaintiff and another boy, Griffith, to get off the truck but finding they were still on the back of the truck when he came to Bellevue, he told them they could ride back to Pittsburgh. Lincoln Avenue, in

Bellevue, on which he usually traveled, was closed for street repairs, and the driver went on to Roosevelt Avenue, with which he was not familiar. Roosevelt Avenue ends at Riverview Avenue, there being a steep descent on the other side at that point of from seventy-five to one hundred feet. The night was dark and foggy. O'Neill could not see more than about eight feet in front of him. He was running down grade about fifteen miles an hour. When he came to Riverview Avenue, he should have turned squarely to the left, but went straight ahead over the curb and down the embankment or hill, causing, inter alia, the injuries to the minor plaintiff.

The uncontradicted evidence on behalf of the plaintiffs is that O'Neill, the defendant's driver, had no authority to let these boys ride on the truck. On the contrary he had received explicit instructions that he should not carry them. In this situation the very recent case of Zavodnick v. Rose, 297 Pa. 86, applies, where it was held that the unauthorized act of the servant in suffering a third party to ride upon a truck cannot impose on the master the duty of safe carriage, or make him liable for an injury the third party may suffer from the act of the servant unless it be wilful or wanton. To the same effect are: Hartigan v. Public Ledger, 291 Pa. 588; Perrin v. Glassport Lumber Co., 276 Pa. 8; Hughes v. Murdoch Storage & Transportation Co., 269 Pa. 222. In the last named case, where the driver did not give a boy, fourteen years old, time enough to alight safely, the opinion writer, Mr. Justice KEPHART said: "The servant has no right to impose upon his master's onerous liability by holding him responsible for the safe carriage of any person he may see fit to accept as a passenger ...... If there was some risk in riding, the passenger assumed whatever risk there was, as well as that which came from his alighting and leaving the truck ....... The master, short of wantonness, did not owe him the

duty of safe carriage or to see that he safely alighted. The boy's appearance on the truck was a trespass, created by the act of the driver for his own personal pleasure, comfort or convenience, and that of the boy. He continued as a trespasser and the driver's subsequent conduct in negligently starting the truck before the boy was off, was part of the same trespass." And in Perrin v. Glassport Lumber Co., supra, Mr. Justice SCHAFFER speaking for the Supreme Court, said: "The fact that the injured one was of tender years, though relieving it from any charge of contributory negligence,—[the child there was only three years old],—does not alter its status as a trespasser: Gillespie v. McGowan, 100 Pa. 144. In such case, a recovery can be had only where the injury was wantonly or intentionally inflicted . . . . . . where, however, the proof fails to show the wilful infliction of some harm, or facts from which such purpose may be inferred, the master cannot be held liable."

Cases illustrating wanton and wilful acts on the part of the servant for which the master has been held liable to a trespasser are: Biddle v. Hestonville &c. Passenger Railway Co., 112 Pa. 551, where the driver of a street car compelled a boy trespassing on the platform to jump off while it was in motion: Brennan v. Merchant & Co., 205 Pa. 258, where the driver of a truck struck a boy, eight years old, holding on to a standard of the truck, a blow with his whip, causing him to fall under the wheels; Hyman v. Tilton, 208 Pa. 641, where a boy ten years old climbed upon a moving van and was knocked or frightened off by the driver lashing at him with his whip; Pollack v. Penna. R. Co., 210 Pa. 631, where a boy nine years old was trespassing on a moving freight car and two brakemen by threatening motions, loud calls and the flourishing of a switch club, caused him to jump or fall; Petrowski v. Phila. & Reading Ry. Co., 263 Pa. 531, where a boy twelve years old on a moving train

was chased by a brakeman who ordered him to get off, and on the boy's failure to obey, threw a club at him which caused him to dodge and fall; Thomas v. Southern Penna. Traction Co., 270 Pa. 146, where a boy eight years old trespassing on a street car was forced or frightened from it by the conductor, and in jumping was killed by a passing automobile; Lafferty v. Armour & Co., 272 Pa. 588, where a boy six and one-half years old jumped off a moving truck because the driver struck at him with his whip; Weiermuller v. American Ice Co., 89 Pa. Superior Ct. 278, where a boy seven years old had climbed on the rear steps of an ice wagon, and the driver called to him to get off while the wagon was in motion and lashed at him with his whip, so that he jumped and fell in the path of a motor car. In all of them there was present a wilful and intentional act on the part of the servant, done for the purpose of making the boy leave the moving train, car or vehicle, regardless of the consequences to the boy. In every case, the servant had the right to require the trespasser to leave the train, car or vehicle, but he was bound in enforcing that right, even as to a trespasser, to pay due regard to the probable consequences to the trespasser in thus putting him off; he could not force him off into imminent danger.

One expression from the opinion in Petrowski v. Phila. & Reading Ry. Co., supra, has led the appellee to contend that any "negligent" act of the servant must be considered "wanton and wilful." On page 536 of the opinion, Mr. Justice MOSCHZISKER said: "Finally, where one, knowing that a child of tender years is trespassing upon a vehicle under his care, negligently acts in such a manner as to injure the trespasser, the conduct of the transgressor is viewed in law as 'intentional,' or wilful and 'wanton;' and although we have said in a case of this character (McGinnis v. Peoples Bros., 249 Pa. 335, 338) that the defendant is entitled to the affirmance of a point to the

effect that the jury must find the injury was 'wantonly and intentionally' inflicted, yet in that case, those terms are used in the sense just stated.'' That expression must, however, be taken in connection with the case in which it was used: Kates' Est., 282 Pa. 417; O'Malley v. O'Malley, 272 Pa. 528, 536; Cohens v. Virginia, 6 Wheaton 264, 399. The substantial issue in the Petrowski case was, (p. 537), had the plaintiff been injured through being forced or scared from a moving train by a servant of defendant acting within the general scope of his employment and in furtherance of his master's business; or had the child been hurt while attempting to board a moving train? The opinion writer was dealing with the duty resting upon the defendant if its servants undertook to put trespassers of tender years off its trains. They were under no duty to search the train for trespassers and care for them before the train was set in motion (p. 536; Hojecki v. Phila. & Reading Ry. Co., 283 Pa. 444, 447), but if observed they were bound to use due care under the circumstances in ejecting them, and there was a duty not to commit any overt act which was likely to cause injury, (p. 536); and although they may have had no personal ill will against the trespassers, they could not, while the train was in motion, force or scare them into jumping from the moving train to their injury. Such action would be so regardless of consequences as to amount to wilfulness or wantonness: Osalek v. B. & O. R. R. Co., 295 Pa. 553, 560. The duty to use due care under the circumstances arose in connection with the ejection of the trespassers. But the expression must not be taken from its connection and used in relation to an act in respect to which the master owed the trespasser no duty. The master of a vehicle owes a trespasser no duty of safe carriage. He may not wantonly injure the trespasser, even while traveling on his vehicle, but he is under no duty of safe carriage such as attaches to a passenger

on the conveyance, and for mere acts of negligence in transportation, he is not responsible to a trespasser. This is established in the later cases of Hughes v. Murdoch Storage & Transportation Co., supra, p. 224; Perrin v. Glassport Lumber Co., supra, pp. 11, 12; Hartigan v. Public Ledger, supra, p. 590, for in all of them, the conduct of defendant's servant would have been negligent as respects a passenger—negligence was assumed. For example, if in the railroad cases, where the boys were hurt by being forced or scared off the train while in motion, no such incident had occurred, but the trespasser had been injured by a negligent act of the engineer in running past a red signal, no recovery could have been had, for the railroads owed the trespassers no duty of safe transportation: Hughes v. Murdoch Storage & Transportation Co., supra; Perrin v. Glassport Lumber Co., supra; D'Allesandro v. Bentivoglia, 285 Pa. 72, 73; Wind v. Steiert, 71 Pa. Superior Ct. 194.

In Cover v. Hershey Transit Co., 290 Pa. 551, 557, the duty to slow up and not run down the boy arose when the motorman saw him, even though a trespasser, on the company's trestle, at a point where he could not escape the oncoming car.

In Bowman v. Penna. R. R. Co., 299 Pa. 558, cited by the court below, the company owed the plaintiff the duty of safe transportation, for he was not a trespasser, but a passenger traveling on an interstate free pass, which contained a stipulation against liability. The Supreme Court, following the rule of the United States Supreme Court (N. Y. Central R. Co. v. Mohney, 252 U. S. 152), held that there could be no recovery unless the defendant was guilty of wilful, wanton or gross negligence and defined the term as follows: "To constitute wilful, wanton or gross negligence, there must be a realization, by the one guilty, of the possibility of the injury flowing from his act: 45 C. J. 675. To be wilful the harm must have been intention-

ally inflicted, and to be wanton must have been committed with a reckless disregard of the rights of others. In the instant case, to justify a verdict for plaintiff, evidence must have disclosed that the engineer knew of the peril, and nevertheless proceeded and inflicted the injury with the result which could have been foreseen (DiMeglio v. P. & R. R. R. Co., 249 Pa. 319), and could have been prevented after he first became aware of the threatened danger: Cover v. Hershey Transit Co., 290 Pa. 551. It could not be contended here that there was an intention to run down the train in front, which in all likelihood would cause the injury or death, as it did, of the employees of the second train, nor was there any reckless disregard of a duty to protect others shown.''

Not everything, even in that opinion relating as it did to the duty of safe transportation owing a passenger traveling on an interstate free pass, which released the carrier from liability for negligence, can be applied without discrimination to the *transportation* of a trespasser to whom no duty of safe carriage is owed. But it is undisputed, in the present case, that O'Neill, the driver, did not realize that he was approaching the dead end of Roosevelt Avenue—he was unfamiliar with the street and did not know it ended in Riverview Avenue; that he did not know of the steep enbankment and sudden descent on the other side of Riverview Avenue; nor did he know of the peril and the possibility of the injury flowing from his proceeding across Riverview Avenue, and nevertheless proceeded and inflicted the injury. He had no intention of running over the curb and down the steep embankment which bordered the other side of the street and could not have prevented the accident after he first became aware of the threatened danger. He certainly had no thought or intention of driving himself and his truck over the precipitous slope, for he did not know there was any such danger, or that Roosevelt Avenue

did not go any further than Riverview Avenue, but came to a dead end there. The whole measure of his negligence was proceeding at fifteen miles an hour on a street where he could not see further than eight feet ahead of him. While this might have been negligence entitling the plaintiff to recover had the latter been a passenger to whom defendant owed a duty of safe carriage (See Cormican v. Menke, 306 Pa. 156, 162), it establishes no liability in favor of a trespasser to whom the defendant owed no duty of carriage at all. The undisputed facts in the case relieve it of the wilful and wanton action described in the Bowman case, and held to be necessary, under the other decisions above cited, for a recovery against the defendant.

The assignment of error in each appeal is sustained, and the judgment is reversed and is now entered in favor of the defendant non obstante veredicto.