BONZIK et al. v. DELAWARE & HUDSON R. CORPORATION, and five other cases.

Nos. 3390–3395.

District Court, M. D. Pennsylvania.

Nov. 22, 1938.

A. M. Lucks and R. L. Levy, both of Scranton, Pa., for plaintiffs.

Ben Jones, Jr., and Paul Bedford, both of Wilkes-Barre, Pa., and John M. McCourt, of Scranton, Pa., for defendant.

JOHNSON, District Judge.

These are six actions of trespass brought to recover damages for personal injuries and death alleged to have resulted from the wanton negligence of the defendant company in the operation of one of its freight trains in the Borough of Avoca, Pennsylvania, on July 23, 1933.

The six suits were tried together before the court and a jury in November, 1936, when the jury unable to agree after deliberating two days, was discharged. Another trial was held in April, 1938, when the jury found for the plaintiffs awarding verdicts totalling $50,000.

The defendant has filed motions for judgment notwithstanding the verdicts on points reserved by the court at the trial, and has also filed motions for new trials, giving seven reasons therefor.

The motion for judgment on the points reserved will be considered first. This motion raises the question whether, as a matter of law, there was sufficient evidence to justify a finding by the jury that the boys were killed and injured as a result of the wanton negligence of the defendant's employees. From all the evidence the jury was warranted in finding the following facts:

On the afternoon of Sunday, July 23, 1933, seven boys living in the vicinity of Hudson, Luzerne County, Pennsylvania, boarded a freight train of the defendant company, to ride to Rocky Glen, an amusement park about ten miles distant, where Primo Carnera, a well known prizefighter,

was scheduled to appear in an exhibition boxing match.

The train was assembled at a yard in Hudson, and consisted of eighty-four freight cars, with a locomotive at the head and three "pusher" locomotives at the rear.

The boys were playing baseball near the railroad yard, and while the train was being assembled, they obtained permission from the train crew to ride on it, with the understanding that they could get off near Rocky Glen Park where the train would slow down for a long curve. In addition to the boys there were also many other persons riding on the train.

The boys boarded the train at a point several cars to the rear of the head locomotive, and passed along it until they reached the forty-fifth car, a flat car loaded with sheet steel.

The train traveled slowly from Hudson to Yatesville, because of the steep up-grade. At Yatesville several of the "pusher" locomotives were disconnected, the track from Yatesville to Avoca being down-grade. While the train was passing through the Borough of Avoca, seventeen of the cars in the middle of the train were derailed and wrecked, including the car in which the boys were riding. Two of the boys were killed, and the survivors were seriously and painfully injured as a result of the accident. One of the surviving boys brought an action against the defendant company which was tried separately and resulted in a verdict for the defendant, in which case a motion for a new trial is now pending.

For many years prior to the accident, underground coal mining operations had been carried on under defendant's tracks in the vicinity of the derailment, and the tracks had been subject to surface subsidences due to these mining operations. Because of these conditions the company had for many years enforced a rule limiting the speed of trains in this vicinity to ten miles per hour, and had posted "slow order" signs at both ends of the stretch of track where the subsidences had occurred. About three months prior to the accident, this speed limit had been increased to a maximum of twenty miles an hour, and for several years prior to the accident, a day and night watchman had patrolled the tracks in this vicinity to watch for cave-ins, or subsidences. For several days immediately preceding the accident, there had been a subsidence in the track at the point where the wreck occurred. This subsidence covered about three hundred feet of track, with a maximum depth of four inches at the center. The day before the accident, the track at this point had been raised and filled with ballast of locomotive ashes.

The engineer of the train was familiar with track conditions in the vicinity of the accident, and with the rule which limited the speed of trains passing over this section to twenty miles per hour.

At the time of the derailment the train was travelling at fifty miles an hour, and the derailment occurred at the point where the track had been repaired the day before. This portion of track, located on a curve, was completely destroyed by the wreck, the rails and ties being torn up and scattered widely.

Seventeen of the cars, including that which contained the boys, were piled up and scattered along the right of way. Most of the derailed cars were separated from their trucks and wheels, and the car which contained the boys was found about ninety feet west of the north-bound track on which it had been travelling.

■ Under these facts, while the boys in contemplation of law were trespassers, or licensees, yet defendant owed them the duty of refraining from injuring them by reason of wilful or wanton conduct. New York Central R. R. Co. v. Mohney, 252 U.S. 152, 40 S.Ct. 287, 64 L.Ed. 502, 9 A.L.R. 496; Duree v. Wabash R. Co., 8 Cir., 241 F. 454; Hojecki v. Philadelphia & Reading R. Co., 283 Pa. 444, 129 A. 327; Collins v. Rosenberg, 106 Pa.Super. 269, 161 A. 580.

■ "To constitute willful, wanton or gross negligence, there must be a realization, by the one guilty, of the possibility of injury flowing from his act. 45 C.J. 675. To be willful the harm must have been intentionally inflicted, and to be wanton must have been committed with a reckless disregard of the rights of others. In the instant case, to justify a verdict for plaintiff, evidence must have disclosed that the engineer knew of the peril, and nevertheless proceeded and inflicted the injury with the result which could have been foreseen (DiMeglio v. Philadelphia & R. R. Co., 249 Pa. 319, 94 A. 1095), and could have been prevented after he first became aware of the threatened

danger: Cover v. Hershey Transit Company, 290 Pa. 551, 139 A. 266." Bowman v. Pennsylvania R. R., 299 Pa. 558, at page 567, 149 A. 877, at page 880. "Wanton negligence consists in a heedless and reckless disregard for another's rights, with the consciousness that the act or omission to act may result in injury to that other." Hazle v. Southern Pacific Company, C.C., 173 F. 431.

In the present case no wilful negligence is charged. Thus the question is narrowed to whether the conduct of the defendant's employees was committed with a reckless disregard of the rights and safety of the boys. "The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him." Restatement of Torts, Sec. 500; De Rosa v. Penn Rys. Co., 120 Pa.Super. 90, 182 A. 101.

In the light of these standards, there is ample evidence to justify a finding in the present case that defendant's employees were guilty of wanton negligence. The jury was warranted in finding that the train crew knew of the presence of the boys on the train, that they knew of the dangerous condition of the tracks caused by the mining operations, and of the subsidences which had been repaired the day before, and that they knew of the order fixing the maximum speed of the train at twenty miles an hour. Notwithstanding this, there is evidence to justify a finding that when the derailment occurred the train was travelling over this dangerous section of track, down grade and around a curve, at the rate of fifty miles an hour. This conduct was in reckless disregard of the safety of the boys, and involved a high degree of probability that substantial harm would result to them and should have been foreseen.

Not only was there sufficient evidence to warrant the jury in finding that the conduct of defendant's employees involved wanton negligence, but there was also sufficient evidence to warrant a finding that this conduct was the proximate, or legal cause of the accident. To justify such a finding, it is not necessary that the jury have before it direct evidence of the exact cause of the accident, provided the facts brought out at the trial are sufficient to permit them to draw a reasonable inference that the defendant's conduct was the cause of the plaintiffs' injuries. Sakach v. Antonoplos, 298 Pa. 130, 148 A. 58; Tucker v. Railway Co., 227 Pa. 66, 75 A. 991; Perkins v. Northern Pac. Ry. Co., 9 Cir. 199 F. 712.

In the present case the jury had sufficient facts before it from which to draw a reasonable inference that the excessive speed of the train over the defective track in direct violation of the company's slow order was the legal cause of the accident. There had been a subsidence at the point where the derailment occurred, and at this point the track had been raised and filled with ashes just the day before the wreck. The train was very heavy, consisting of two locomotives and eighty-four cars, seventy-eight of which were loaded. At the point of the derailment the track was curved and down-grade. There was expert testimony that the pressure exerted by a moving train upon the rails is twenty-five times as great at fifty miles per hour as it is at ten miles per hour, and that the pressure exerted on the outside rail is greater at a curve than on a straight section of track. From these facts, the jury could reasonably infer that the heavy train travelling at fifty miles an hour over the curved section of track which had been raised, just the day before, by means of an ash-fill, exerted sufficient pressure on the track to cause it to spread after the head locomotive and forty cars had passed over it, derailing the cars which followed, and causing plaintiffs' injuries.

Therefore, in the light of this overwhelming evidence, the motions for judgment notwithstanding the verdicts on the points reserved must be dismissed.

Defendant's motions for a new trial will next be considered. The first two reasons for a new trial raise the same question raised by the motions for judgment on the points reserved. They allege error in the failure of the court to affirm certain points for charge to the jury which amounted to binding instructions in favor of the defendant. There is no merit in these reasons, and they have been fully discussed above.

The third reason for a new trial is that the court erred in not fully develop--

ing the defendant's theory of the case in the charge to the jury. There is no merit in this contention. The jury were fully and carefully instructed on defendant's theory of the case, and were directed to find for the defendant if they believed the defendant's theory or contention of the cause of the accident.

■ The fourth reason for a new trial complains that the court erred in instructing the jury that in determining the speed of the train they should consider the distance the train ran after the accident. Defendant contends that this instruction was improper because there was no evidence that the engineer at the head of the train knew of the accident in time to stop the train suddenly. The instruction on this point specifically limited the consideration of the jury to the distance the train ran after the crew knew of the accident and made efforts to stop the train. Thus, the defendant was in no way prejudiced by this instruction.

■ The fifth reason for a new trial complains that the court erred in qualifying defendant's eighth point for charge. This point was that if the jury believed that the accident was due to a broken brake rigging on one of the cars, the verdicts must be for the defendant. This point was affirmed with the qualification that if the brake rigging was broken because of the excessive speed of the train and the condition of the track, then plaintiffs would be entitled to recover. This qualification is in accord with the general rule that if the negligent conduct of the defendant is the proximate, or legal cause of plaintiffs' injuries, the defendant is liable, regardless of the specific, or immediate cause of the injury. Thus, there is no merit in this reason.

■ The sixth reason given for a new trial is that the court erred in the charge to the jury with reference to defendant's fifth point. In this point the defendant asked the court to instruct the jury that there was no evidence of a subsidence, or settlement in the tracks at the time of the accident. This point was affirmed, but the jury was further instructed that it could infer that there was a subsidence at the time of the accident from all of the surrounding circumstances. Under the authorities cited above, the jury was justified in making any reasonable inference from the facts as to the cause of the ac-

cident. Consequently, this instruction was proper.

■ The seventh reason given for a new trial is that the verdicts were excessive. The jury returned ten verdicts of $5,000, each, or a total of $50,000. This included two verdicts in favor of plaintiff-parents for the death of their minor sons, four verdicts in favor of plaintiff-parents for injuries to their minor sons, and four verdicts in favor of plaintiff-boys for injuries. At the time of the accident the boys were from thirteen to sixteen years of age. Three of the surviving boys suffered serious permanent injuries, two through the loss of legs, and the third through the crushing of his right foot. Considering these circumstances, the verdicts were all low in amount, except those rendered in favor of Adam Zelenski and his father, Stanley Zelenski.

■ Adam Zelenski suffered a broken leg which disabled him for about five months. He was fifteen years of age at the time of the accident, and his hospital bill was $53.50, his doctor bill $75. There was no evidence of permanent disability. Under these facts, the plaintiff-father, Stanley Zelenski, was only entitled to the reasonable and proper expenses incurred because of the accident in the treatment and care of his minor son. Pennsylvania R. Co. v. Kelly, 31 Pa. 372.

■ The verdict in favor of Adam Zelenski must be based solely upon the pain, suffering and inconvenience to which he was subjected as a result of the accident. There is no evidence that his future earning power was diminished, nor that he lost any earnings during the period of disability. Under these circumstances, the facts do not warrant a verdict of $5,000.

And now, November 22d, 1938, the motions for judgment notwithstanding the verdicts on the points reserved in the above entitled cases are overruled. New trials are refused in all of the cases except that of Adam Zelenski et al. v. The Delaware and Hudson Railroad Corporation, No. 3395, June Term, 1933. Unless the plaintiff Adam Zelenski within ten days files a stipulation that he will accept the sum of $2,500 in full satisfaction of his claim against the defendant, and unless the plaintiff Stanley Zelenski within ten days files a stipulation that he will accept the sum of $128.50 in full satisfac-

tion of his claim against the defendant, a new trial will be granted in this case (No. 3395, June Term, 1933). In all of the other cases judgment is directed to be entered in favor of the plaintiffs on the verdicts.