**DELAWARE & H. R. CORPORATION v. BONZIK et al., and nine other cases.**

**Nos. 6956–6965.**

Circuit Court of Appeals, Third Circuit.

June 30, 1939.

Rasch and Thomas L. Ennis, both of New York City, of counsel), for appellant.

A. M. Lucks and R. L. Levy, both of Scranton, Pa., for appellees.

Before BIGGS, MARIS, and CLARK, Circuit Judges.

MARIS, Circuit Judge.

On July 23, 1933 seven boys, all minors, boarded the defendant's train at Hudson, Pennsylvania, in order to ride to an amusement park about ten miles distant. The train consisted of seventy-seven loaded and seven empty freight cars; was pulled by an engine at the head and pushed by another engine at the rear. The boys said that they climbed onto a car close to the front engine and worked their way back to the forty-fifth car, a flat gondola loaded with sheets of steel. About six miles from Hudson at Avoca the train was derailed and several of the cars, among which was the gondola, were wrecked. Two of the boys were killed and five injured by the loose sheets of steel thrown against them. One of the injured boys and his parents brought a negligence action in the court below which resulted in a verdict for the defendant on November 15, 1934. A motion for a new trial is still pending. That case is not before us. The negligence actions brought by the other injured boys and their parents and the parents of the deceased boys were tried two years later and resulted in a disagreement of the jury on November 14, 1936. On a retrial April 9, 1938 the jury returned verdicts of $5,000 for each of the four injured boys—$5,000 for their respective parents and $5,000 for the parents of the deceased boys. The defendant's motions for judgments notwithstanding the verdicts on points reserved and for new trials were refused. These appeals followed.

Three of the boys testified they obtained permission to board the train from several unidentified members of the train crew. The fourth boy, Adam Zelenski, admitted that he rode on the train without permission. The maximum rate of speed allowed by the defendant for the vicinity where the wreck occurred was twenty miles an hour. This twenty mile speed limit had been in force for eighty-four days before the accident, having been increased from a ten mile speed limit of four years standing. Prior thereto it had been twenty miles per hour. Almost a year before the accident watchmen who had

Paul Bedford and Benjamin R. Jones, Jr., both of Wilkes-Barre, Pa. (Joseph

patrolled the tracks from 1929 to 1932 were removed by the defendant. For about two months prior to the accident a sag of approximately four inches in depth tapering to zero at either end had developed along three hundred feet of the track in the vicinity of the derailment. This sag was visible upon inspection but only by one familiar with track conditions. The defendant had filled it with cinder ballast the day before the accident. The wreck occurred on a three degree curve. In that portion of the tracks involved in this case there had been one subsidence within the knowledge of plaintiffs' witnesses. The plaintiffs' testimony was that the train traveled over the stretch of track which included that portion which had been filled with cinder ballast at fifty miles an hour. They introduced expert testimony that a train traveling fifty miles an hour exerts a pressure upon the rails twenty-five times as great as at ten miles an hour; six and one-half times as great as at twenty miles an hour; that the pressure increases in a geometrical ratio with the speed and that the force and pressure exerted by a moving train is greater upon a curve than upon a straight track.

■ Whether the District Court properly refused to enter judgments for the defendant on the evidence is to be determined by the Pennsylvania law as enunciated by the appellate courts of that state. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

■ By Pennsylvania law the boys were trespassers. We make no distinction between the boys who obtained permission from the train crew and the one who boarded the freight car without permission, for there is not an iota of evidence in the record that any member of the crew had authority to allow riders on the train. On the contrary the rules of the defendant company specifically forbid the granting of such permission. In Tyler et al. v. MacFadden Newspaper Corp., 107 Pa.Super. 166, 163 A. 79, the court held that in the absence of authority from the employer to carry the minor plaintiff as a passenger on the employer's truck the plaintiff was a trespasser. The reason for this ruling is found in Hughes v. Murdoch Storage & Transfer Co., 269 Pa. 222, 112 A. 111, where the court said "The servant (a truck driver) has no right to impose upon his master onerous liability by holding him responsible for the safe carriage of

any person he may see fit to accept as a passenger. Such persons, so invited or permitted to ride, should know of this obvious lack of authority from the position the man holds and the character of his employment. If there was some risk in riding the passenger assumed whatever risk there was, as well as that which came from his alighting and leaving the truck. * * * The master, short of wantonness, did not owe him the duty of safe carriage or to see that he safely alighted. The boy's appearance on the truck was a trespass, created by the act of the driver for his own personal pleasure, comfort, or convenience, and that of the boy. He continued as a trespasser and the driver's subsequent conduct in negligently starting the truck before the boy was off was part of the same trespass."

■ The Pennsylvania courts have frequently had occasion to consider cases in which the plaintiff has been injured while riding on a vehicle with the consent of the driver but without the consent of the latter's employer and against his instructions. In such cases in the absence of wilful or wanton conduct by the employee recovery against the employer because of the negligence of his employee has consistently been denied for the reasons given above. Perrin v. Glassport Lumber Co., 276 Pa. 8, 119 A. 719; Hartigan v. Public Ledger, 291 Pa. 588, 140 A. 524; Zavodnick v. A. Rose & Son, 297 Pa. 86, 146 A. 455; Collins v. Rosenberg, 106 Pa.Super. 269, 161 A. 580; Stefan v. New Process Laundry Company, Inc., 323 Pa. 373, 185 A. 734; Tusko et ux. v. Lynett et al., 326 Pa. 449, 192 A. 410. See also Eldredge—Tort Liability to Trespassers, XII Temple Law Quarterly, 32.

■ The rule that a trespasser cannot recover in the absence of evidence of wilful or wanton conduct by the defendant's employee has been reiterated in the most recent Pennsylvania decisions. Peden et al. v. Baltimore & Ohio R. Co., 324 Pa. 444, 188 A. 586; Noonan et ux. v. Pennsylvania Railroad Co., 128 Pa.Super. 497, 194 A. 212; Reagan et ux. v. Reading Company, 126 Pa.Super. 175, 190 A. 412. It, therefore, becomes important to determine what the courts mean by the phrase "wilful or wanton conduct." In Bowman v. Pennsylvania R. R., 299 Pa. 558, 567, 149 A. 877, 880, the court said: "To be wilful the harm must have been intentionally inflicted, and to be wanton must have been

committed with a reckless regard of the rights of others."

Section 500 of the Restatement of Torts enlarges on this concept. It is there stated: "The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him."

■ On a motion by the defendant for judgment on the record the court of course must consider the testimony in the light most favorable to the plaintiff, resolve all conflicts in his favor and give him the benefit of every fact pertaining to the issues involved which may be reasonably deduced from the evidence.

The plaintiffs contend the failure of the engineer to slow down to twenty miles per hour as directed by the markers on the right of way and by the regulations of the defendant railroad, and his operation of the train at a speed of fifty miles an hour or more, in the light of the alleged defective track conditions and his knowledge of the same, amounted to such wanton conduct as to support the verdicts in their favor.

■ The engineer's action in disregarding the slow order was unquestionably negligent. It is clear that the order was made because of the possibility of subsidence or caving in of the track due to mining operations. Its purpose was to require trains to be operated so slowly that they could be stopped in safety if a subsidence were discovered. The slow signs consequently warned of possible peril but not of present or highly probable danger. The plaintiffs' evidence established the fact that the only track subsidence in the vicinity of the wreck had been completely repaired the day before the accident and that the track was in normal condition. It was not shown that the engineer knew or should have known of that subsidence since the evidence was that its maximum depth was four inches and that it could not be detected except upon actual inspection. There was evidence that a tremendous increase in pressure on the tracks resulted from the increase in speed. There was no evidence, however, that the tracks were not in condition to withstand such pressure as might be exerted by the train operated at fifty miles an hour or that the engineer knew or should have known that the tracks were incapable of bearing the resultant load.

The record does not sustain the plaintiffs' contention that the wreck ensued as a result of the existence of defective track unable to bear the weight placed upon it by a train operated at fifty miles an hour. In fact the testimony offered on behalf of the plaintiffs was that there was nothing wrong with the track at the time of the accident. There was, therefore, no evidence of immediate or probable danger known to the engineer.

The case is clearly distinguishable from those in which the act held to be wanton was that of consciously running past a red light or other stop signal. New York Cent. R. Co. v. Mohney, 252 U.S. 152, 40 S.Ct. 287, 64 L.Ed. 502, 9 A.L.R. 496; Bowman v. Pennsylvania R. R., supra. In those cases the signal warned of present danger immediately ahead. The Bowman case offers no solace to a plaintiff trespasser, for, as Judge Keller pointed out in Collins v. Rosenberg, 106 Pa.Super. 269, 277, 161 A. 580, 583, in referring to the Bowman case, "Not everything, even in that opinion, relating as it did to the duty of safe transportation owing a passenger traveling on an interstate free pass, which released the carrier from liability for negligence, can be applied without discrimination to the transportation of a trespasser to whom no duty of safe carriage is owed." In summarizing the railroad trespass cases he said (106 Pa.Super. page 275, 161 A. page 582): "The master of a vehicle owes a trespasser no duty of safe carriage. He may not wantonly injure the trespasser, even while traveling on his vehicle, but he is under no duty of safe carriage such as attaches to a passenger on the conveyance, and for mere acts of negligence in transportation, he is not responsible to a trespasser. This is established in the later cases of Hughes v. Murdoch Storage & Transfer Co., supra, 269 Pa. page 224, 112 A. 111; Perrin v. Glassport Lumber Co., supra, 276 Pa. [pages] 11, 12, 119 A. 719; Hartigan v. Public Ledger, supra, 291 Pa. [page] 590, 140 A. 524, for in all of them, the conduct of defendant's servant would have been negligent as respects a passenger—negligence was assumed. For example, if in

the railroad cases, where the boys were hurt by being forced or scared off the train while in motion, no such incident had occurred, but the trespasser had been injured by a negligent act of the engineer in running past a red signal, no recovery could have been had, for the railroads owed the trespassers no duty of safe transportation. Hughes v. Murdoch Storage & Transfer Co., supra; Perrin v. Glassport Lumber Co., supra; D'Allesandro v. Bentivoglia, 285 Pa. 72, 73, 131 A. 592; Wind v. Steiert [& Son], 71 Pa. Super. 194."

We conclude that the conduct of the defendant's engineer though negligent was not willful or wanton.

The judgments for the plaintiffs are reversed and the causes are remanded to the court below with directions to enter judgments non obstante veredicto in favor of the defendant.